IN THE MATTER OF THE APPLICATION FOR A PUBLIC ROAD IN THE TOWNSHIPS OF PISCATAWAY AND BRIDGEWATER, IN THE COUNTIES OF MIDDLESEX AND SOMERSET.

1. The incorporated boroughs of this state are invested with all requisite power and authority to lay out and open streets and highways within their respective limits.
2. Such powers, being effective for the purpose, is exclusive, and the General Road law is not operative within such municipalities.

On rule to show cause why the order appointing surveyors of the highways to lay out a public road, and their return thereof, should not be set aside.

Argued at February Term, 1892, before Justices MAGIE and WERTS.

For the rule, *James J. Bergen.*

*Contra, Richard V. Lindabury* and *Henry C. Suydam.*

The opinion of the court was delivered by

WERTS, J.   By a return, dated November 25th, 1891, surveyors of the highways, theretofore appointed by the Supreme Court, laid out a public road, partly in Piscataway township, Middlesex county, and partly in Bridgewater township, Somerset county—all of the road in Somerset county being within the corporate limits of the borough of Bound Brook, which was incorporated under the act for the formation of borough goverments, approved April 5th, 1878. *Rev. Sup.*, *p.* 44.

A rule to show cause why the order appointing the surveyors should not be vacated, and their return set aside, was granted by Justice Magie, and made returnable to the February Term, 1892.

It is insisted that the appointment and proceedings of the surveyors having been had and taken under the General Road law, must be set aside, because over the subject-matter of laying out and opening streets within it territorial limits the borough of Bound Brook had exclusive jurisdiction and control.

If such insistment be well founded, the appointment and return must be set aside. This court, and the Court of Errors, having repeatedly held that, where effective power is vested in a municipality to lay out and open streets and highways within its chartered limits, in a manner different from the mode prescribed by general law, the power conferred is exclusive, and repeals or suspends the general law within the particular locality. *State* v. *Clarke,* 1 *Dutcher* 54; *State, Bodine, pros.,* v. *Trenton,* 7 *Vroom* 198; *Keyport* v. *Cherry,* 22 *Id.* 417; *S. C.,* 23 *Id.* 544.

The principle enunciated in the cases cited is the same, and should be applied, whether the proposed road is to be laid wholly within a single township, or between different townships of the same county, or between two or more counties.

The simple question then is, Was the borough of Bound Brook, at the time when the proceedings under review were taken, invested with effective power to lay out and open streets within its corporate limits?

The original Borough act, under which Bound Brook was incorporated, it is conceded conferred no such power.

On April 1st, 1887 (*Pamph. L., p.* 126), a supplement to the Borough act was approved, by the first section of which boroughs were authorized to order and cause any street, road or avenue, or any section thereof, to be graded, graveled, paved, macadamized or otherwise improved and regulated in such manner as deemed advisable.

Other sections of the supplemental act provide for ascertaining the cost and expense of the improvements authorized by section 1, and for assessing the same upon the lands benefited in proportion to the benefits received, and if the cost should exceed the benefits, then the excess to be paid out of the general road tax.

By a further supplement to the Borough act, approved March 23d, 1888 (*Pamph. L., p.* 226), section 1 of the supplement of April 1st, 1887, is so amended as to provide that the mayor and council of boroughs "shall have power and authority to lay out, open, extend, alter, widen, straighten and vacate streets, roads, avenues and highways, whether the same be dedicated or otherwise obtained to and for public use; and, also, to grade, pave, gravel, macadamize or otherwise improve any street, road, avenue, public square or place within the borough; and when, for either of the objects or purposes aforesaid, it is necessary to take undedicated lands, then to treat with the owner or owners of the lands so to be taken, and pay for the same such compensation as may be just and right; and * * * if unable to agree, * * * then commis-

sioners appointed as hereinafter provided shall estimate and fix the damages such owners will sustain," &c.

By section 2 of a supplement to the Borough act, approved March 13th, 1883 (*Rev. Sup., p.* 49, § 31), it is provided that the road tax assessed and collected within boroughs shall not be used or applied to roads outside of borough limits, but shall be held by the township collector, subject to the order of the borough authorities, for the working, repair and improvement of the streets, &c., within the borough limits. This is the " general road tax " to which the supplement of April 1st, 1887, above mentioned, permits recourse upon happening of the contingency therein contemplated.

By other supplements to the Borough act, approved March 15th, 1881 (*Pamph. L., p.* 115, § 2), and April 24th, 1888 (*Pamph. L., p.* 539, § 2), boroughs are authorized to raise annually, by tax, $1,500 for current expenses. This fund could be resorted to or compelled to be applied to the payment of damages sustained by landowners in laying out and opening streets.

The legislation thus recited seems to vest in boroughs the effective power to lay out and open streets within their respective limits; but all doubt (if any remains) is removed by a legislative act, approved April 21st, 1887. *Pamph. L., p.* 181. Section 1 of this last-mentioned act provides that the council or other governing body " of *any* borough in this state * * * shall have power * * * to lay out, open, extend, alter, widen or straighten the streets and highways therein, * * * and for this purpose may treat with the owner or owners of real estate to be taken, * * * and pay for the same such compensation as may be deemed just and right; and if the governing body of such municipality shall be unable to agree with the owner or owners of the required lands, * * * then commissioners appointed * * * shall estimate the damages such owners will sustain."

Section 2 provides " that the damages and costs of such laying out, opening * * * of such street or highway shall be assessed by three disinterested freeholders, to be

appointed by the council or other governing body, fairly, legally and equitably upon the owners of the property benefited thereby, in such proportion, and to such extent, as the commissioners may deem such lands to be benefited."

Section 3 provides for a meeting, upon notice of the governing body of the borough, to consider the report of the commissioners, and to hear and determine all objections to the report; "they (the governing body) may add to any assessment with consent of the person so assessed, and may confirm the report of the commissioners and carry out the proposed street opening or alteration, and direct the costs and expenses, in excess of the assessment, to be paid out of any appropriation for the making and repairing of streets, if, in their judgment, the best interests of the municipality will be subserved thereby, unless such costs and expenses shall be more than double the assessment for benefits."

Section 4, among other things, provides for an appeal to the Circuit Court by any person whose land is taken.

This last-mentioned act, although not in terms supplemental to the General Borough act, is general in its provisions. It excludes no boroughs nor class of boroughs, however created. It must be held to apply to and include the borough of Bound Brook.

The several acts cited are not so repugnant to, nor inconsistent with, each other that they cannot co-exist and be construed together. They were probably intended to co-exist and be mutually helpful. Adopting that view, the conclusion is that, at the time the proceedings under review were initiated, the borough of Bound Brook was vested with effective and exclusive power to lay out and open streets within its corporate limits. Consequently, the order appointing surveyors is vacated and their return set aside.