JAMES SHIELDS et al.

v.

JANE ROSE ROSS et al.

*Filed at Ottawa October 11, 1895.*

1. MUNICIPAL CORPORATIONS—*grant of power to city over streets is exclusive.* A general charter grant of power to a city over streets and alleys within the city is exclusive.

2. HIGHWAYS—*commissioners have no power within city or village.* Statutes conferring, in general terms, authority upon commissioners of highways over roads, give no authority that can be exercised within the territorial limits of incorporated cities and villages within the towns for which such commissioners are elected.

3. SAME—*act of highway commissioners within city is void.* The action of commissioners of highways in assuming to lay out and open a public road sixty feet wide along a section line, thirty feet in width of which road is within the territorial limits of a city, is null and void, both as to the thirty feet within the city and that without, as they have no power to lay out roads less than forty feet in width.

4. SAME—*highway commissioners cannot open street in city.* Commissioners of highways have no power to interfere with the possession by individuals of a strip of land constituting part of a city street.

5. SAME—*road on line of city—power of town commissioners.* An order of highway commissioners in a town to vacate that portion of a road "in said town" that lies between designated points, will vacate a road thirty-three feet wide lying outside a section line constituting the boundary of a city, although a street of the same width exists on the other side of the section line within such city.

6. SAME—*vacation by commissioners of road lying partly within city.* The action of highway commissioners in vacating a road lying partly within and partly without the corporate limits of a city in their town, is not illegal as to that portion of the road within the town because they have no jurisdiction over the other portion.*

7. SAME—*vacation of highway—what need not appear in record of vacation.* It is not essential, under the statute, to the vacation of a road in a town, that the fact that the required proportion of the land owners in the town were petitioners should appear from the record made in the matter of the vacation.

8. SAME—*what will not invalidate vacation of road.* Proceedings to vacate a road in 1887 were not invalidated by the fact that an indi-

---

*The discontinuance or vacation of a highway by the acts of public authorities is the subject of a very extensive note to *Moffitt* v. *Brainard,* (Iowa,) 26 L. R. A. 821.

vidual paid to the town a sum of money and executed and delivered a deed of another road, as such arrangement was expressly authorized by the statute relating to roads and bridges in counties under township organization.

9. DEDICATION—*plat to which land owner is not a party is not a dedication.* The making by a county surveyor of a plat showing a strip of land as a public highway, to which the owner of the land is not a party, is not a dedication of such strip for the purpose of a street.

10. SAME—*acceptance essential—when work done on road is not an acceptance.* If the giving and accepting of deeds describing premises as a certain out-lot in a city are equivalent to offers to dedicate a strip shown upon a plat as a street, acceptance by the city is essential to complete the dedication; and work done on such strip prior to the first of such deeds cannot constitute such acceptance.

11. EVIDENCE—*presumptions in favor of proceedings as to roads.* The presumptions are all in favor of the regularity and validity of the various steps and proceedings that are preliminary to the entry of the order laying out or vacating roads, but they are subject to rebuttal by any person questioning the validity of the proceedings.

12. SAME—*presumption from act of commissioners in laying out road.* Proceedings taken by commissioners of highways to lay out a public road over a strip of ground constitute a clear admission and strong evidence against them that there was no public road over such strip at that time.

APPEAL from the Circuit Court of Woodford county; the Hon. THOMAS M. SHAW, Judge, presiding.

J. A. REILLY, and STEVENS & HORTON, for appellants:

The ground in controversy was part of a public highway, established by dedication, by user and lapse of time. If it received all that was necessary to enable the public to use it, it was enough to show an acceptance by the public and for its benefit. There is nothing to show that it was not kept in a condition for travel, or that it was neglected by the public authorities. *Mann* v. *Elgin*, 24 Ill. App. 419; *Greene* v. *Oakes*, 17 Ill. 249; *Shugart* v. *Halliday*, 2 Ill. App. 45; *Whitfield* v. *Horrocks*, 15 id. 315; *Marcy* v. *Taylor*, 19 Ill. 634; *Manrose* v. *Parker*, 90 id. 585; *Harding* v. *Town of Hale*, 61 id. 192; *Grube* v. *Nichols*, 36 id. 93; *Insurance Co.* v. *Littlefield*, 67 id. 368; *Supervisors* v. *People*, 116 id. 474; *Eyman* v. *People*, 1 Gilm. 8.

Any acts or attempted acts on the part of the commissioners to deprive the public of the use of the property as a public highway were invalid and void. *Seipp* v. *Railway Co.* 118 Ill. 520; *Marseilles* v. *Howland,* 124 id. 547.

Highway commissioners have no authority or control over the streets of a city. *People* v. *Supervisors,* 111 Ill. 527; *Marseilles* v. *Howland,* 124 id. 547; *Snell* v. *Chicago,* 133 id. 441; *Ottawa* v. *Walker,* 21 id. 605 ; *Commissioners* v. *Baumgarten,* 41 id. 254.

Commissioners of highways are a *quasi* corporation, and can act only in their corporate capacity, unless the statute provides that certain acts may be done otherwise. *McManus* v. *McDonough,* 107 Ill. 95 ; *Lange* v. *Soffel,* 33 Ill. App. 624; *Bouton* v. *McDonough County,* 84 Ill. 384.

Commissioners, being public agents, are a *quasi* corporation, and can only bind the town when exercising powers conferred by statute, and at the time and in the manner designated by law. *Town of Deer Park* v. *Bridge Co.* 3 Ill. App. 570 ; *Rutland* v. *Dayton,* 60 Ill. 58 ; *Bouton* v. *McDonough County,* 84 id. 384.

The only way the acts of this *quasi* corporation can be shown is by the record of the proceedings of all meetings. *People* v. *Madison County,* 23 Ill. App. 386 ; 125 Ill. 334.

A public highway can be vacated only in the manner provided by statute. *Rice* v. *Railway Co.* 30 Ill. App. 481.

The commissioners of highways have no right to grant the use of a highway for private purposes. *Railroad Co.* v. *Reich,* 101 Ill. 157.

A person having no authority to act, cannot, by his conduct, estop others not responsible for his conduct. *Railroad Co.* v. *Belleville,* 122 Ill. 376; *Town of Rice* v. *Railway Co.* 30 Ill. App. 481.

Thomas Kennedy, and Walter W. Ross, for appellees :

The commissioners only surveyed thirty feet for a road within their jurisdiction, and the statutes of this State

provide that a public highway shall be sixty feet wide. Rev. Stat. chap. 121, par. 30.

The commissioners of highways having taken steps to lay out the road, and having made errors which would compel them to abandon their endeavors to lay out the road, have made such admissions as will estop them from claiming a road there, either by dedication or prescription. *Princeton* v. *Templeton,* 71 Ill. 68; *Chicago* v. *Hill,* 124 id. 646; *Harper* v. *Town of Dodds,* 3 Ill. App. 331; *Peyton* v. *Shaw,* 15 id. 192.

If it is contended that the sale of the premises as an out-lot was a sale with reference to the plat, we answer that such a sale is not an offer to dedicate, where the plat was made by municipal officers. *Seeger* v. *Mueller,* 133 Ill. 95.

The case of *Railroad Co.* v. *Kirby,* 104 Ill. 345, holds that where the owner of land has adopted a special mode of using the land, by which he derives profit, and he is to be deprived of that use, justice requires that he be compensated for that loss. The same rule has been followed in *Johnson* v. *Railroad Co.* 111 Ill. 420; *Railway Co.* v. *Railway Co.* 112 id. 608; *Railway Co.* v. *Capps,* 67 id. 607.

Mr. JUSTICE BAKER delivered the opinion of the court:

In the matter of this appeal, James Shields, Joseph E. Hindert and Folkert Danakas, commissioners of highways of the town of Minonk, are appellants, and Jane Rose Ross and Harriet C. Ames are appellees. Said Ross and said Ames are two of the heirs-at-law of the late Miner T. Ames, now deceased, and each of them inherited from him an undivided one-fifth of certain mining property at Minonk. The property consists of a coal mine with about two thousand acres of unmined coal adjoining and adjacent to the shaft, about eighty houses for the use of the miners, and numerous other buildings connected with the plant, and also of a tile factory, tile yard, tile kilns and clay pits. The coal mine employs

about three hundred and fifty persons, has been in operation for twenty-five years, and there is annually taken from the shaft some 100,000 tons of coal. The indications are that it can be successfully and profitably operated for fifty years longer. Each day there are taken from the mine about two hundred tons of dirt and debris. The dirt and debris taken from the shaft during the past twenty-five years cover a space eight hundred feet long, four hundred and forty feet wide, and one hundred and twenty-seven feet high. This pile of refuse cannot be extended west, for immediately adjoining it on that side is the right of way of the Illinois Central Railroad Company; it cannot be extended further east, for the cemetery adjoins it on that side; and the recrement cannot be carried to the south, for in that direction are the tile works, offices, machine shop, carpenter shop, storehouse, ice house, powder house, wells, cisterns, barns, cribs, etc. The refuse has, thus far, been dumped to the north and north-east from the main shaft, and the dirt pile now extends across out-lot 4 and to and beyond the northern limit of the city of Minonk, and across the strip of ground sixty-six feet in width that is here in dispute, and upon a tract of land in section 6 that was purchased by the ancestor of appellees for the specific purpose of using it as a dumping ground for the refuse from the coal mine.

On July 2, 1892, a petition was presented to the appellants, who are commissioners of highways of the town of Minonk, asking them to lay out a new road, of the width of sixty feet, over the lands in sections 6 and 7 owned by appellees and the other heirs of Miner T. Ames, deceased. The commissioners prepared the usual notices for a meeting to hear reasons for and against laying out the road, and fixing the 15th day of July, 1892, as the time, and the city hall in Minonk as the place, for holding said meeting. This notice was posted on July 5, 1892. On July 15, 1892, the commissioners held the meeting and granted the prayer of the petition, endorsing the usual

memorandum on the petition and filing the same in the town clerk's office. They ordered D. H. Davison, a competent surveyor, to make a survey of the proposed road. On the 22d day of July, 1892, the commissioners made a certificate that they were about to lay out the road on the land in controversy in this suit, and stated that the appellees herein and the other heirs of Miner T. Ames, deceased, were the owners of said land, and they stated in said certificate that they had been unable to agree upon the damages with the said appellees and other heirs of Miner T. Ames, deceased, and that said owners of the land had not released their damages, and they asked for a jury to assess the damages of said owners. This certificate was filed with J. P. Robinson, justice of the peace in Minonk, Illinois, on the 22d day of July, 1892. Justice Robinson issued the usual summons to the said land owners. Failing to get service on the said owners of the land, notice was served on D. S. Richards, superintendent of the coal shaft owned by said heirs, and notices were posted. On August 19, 1892, the justice issued a *venire* for a jury. The jury were duly sworn to assess the damages of the land owners, and returned a verdict allowing $200 damages to appellees and the other heirs of Miner T. Ames for the land proposed to be taken for the road. Neither of the appellees herein appeared nor was represented in said proceedings.

On August 20, 1892, the commissioners gave public notice that they would meet on August 27, 1892, to finally determine upon the laying out of the road. They held the meeting on August 27, 1892, and made an order laying out the road, and filed the order and other papers with the town clerk. The order and other papers were afterwards recorded by the town clerk. On August 27, 1892, the commissioners drew a sixty days' notice, in writing, to remove fences. This notice was directed to D. S. Richards, as occupant of the premises, and had attached to it an exact copy of the order of the commissioners lay-

ing out the new road, with a copy of survey and file-marks attached. This sixty-day notice was served on D. S. Richards on the 29th day of August, 1892, and within a few days after the expiration of the sixty days the commissioners entered upon the premises in controversy and began tearing down the fences and digging into and removing the pile of refuse from the mine at the place where the proposed road was located, for the purpose of grading and opening said proposed road. The road sought to be opened extended east and west on the section line between sections 6 and 7 for a distance of five hundred and twelve feet, and was sixty feet in width, the south thirty feet of the strip being wholly within the corporate limits of the city of Minonk and the north thirty feet being outside of the city limits. Thereupon, appellees filed this bill for an injunction to restrain the commissioners of highways from opening a highway or road on the premises in question, or from in any way interfering with the possession of appellees. A temporary injunction was granted by the master in chancery. The commissioners of highways claimed in their answer the existence of a public highway on and over the premises, both by virtue of the proceedings based on the petition of July 2, 1892, and independently of said proceedings. Replication was filed to the answer and proofs were taken, and upon the hearing of the cause a decree was entered making the injunction perpetual.

We think that appellants can take nothing by the proceedings had in 1892. As we understand the case, the city of Minonk is incorporated under an act in force March 7, 1867, (3 Private Laws of 1867, p. 259,) and by that act it is declared to embrace within its boundaries the whole of section 7, township 28, north, range 2, east of the third principal meridian, in Woodford county. By its charter it is expressly given power to open, alter, extend, widen, abolish, grade, establish, pave or drain, and otherwise alter and improve and keep in repair, all

streets, lanes, avenues and alleys within its corporate
limits.   These powers are exclusive; and the doctrine
is, that statutes conferring, in general terms, authority
upon commissioners of highways to lay out, open, main-
tain or vacate roads, do not give an authority that can
be exercised within the territorial limits of cities and vil-
lages, although located within the towns for which such
commissioners of highways are elected.   (*Town of Ottawa*
v. *Walker*, 21 Ill. 605; *Commissioners* v. *Baumgarten*, 41 id.
254; *Cairo and Vincennes Railroad Co.* v. *People*, 92 id. 170;
*People ex rel.* v. *Supervisors*, 111 id. 527; *McCartney* v. *Chicago
and Evanston Railroad Co.* 112 id. 611; *People ex rel.* v. *Chi-
cago and Northwestern Railway Co.* 118 id. 520; *Village of
Marseilles* v. *Howland*, 124 id. 547; *Snell* v. *City of Chicago*,
133 id. 413.)   These commissioners of highways, then,
had no jurisdiction whatever in regard to highways or
roads within the incorporated city of Minonk, and when
they assumed to lay out and open a public road sixty
feet wide along the section line between sections 6 and 7,
and located thirty feet, in width, of said road in section 7
and within the territorial limits of the city, their action,
at least in respect to said thirty feet, was manifestly
null and void and of no effect whatever.   Nor can the
thirty foot strip in section 7 be excluded from considera-
tion, and the action of the highway commissioners re-
garded as effective in respect to the thirty feet in section
6 that was surveyed for a road, on the ground that the
land in that section was within their jurisdiction.   Their
power in the premises was statutory, and in derogation
of the property rights of the citizen, and is to be strictly
construed.   The statute provides, in express terms, that
all public roads established under the provisions of the
act shall be of the width of sixty feet, but that short
roads, not exceeding two miles in length, may be of a
width not less than forty feet nor more than sixty feet.
The statute gives to appellants no authority to take from

appellees their land for the purpose of locating thereon a public road only thirty feet wide.

It seems that in March, 1865, D. H. Davison, county surveyor of Woodford county, made a survey and plat of the incorporated town of Minonk, and it appears from said plat that thirty-three feet of ground immediately south of the section line between sections 6 and 7, and immediately north of out-lot 4 and the adjoining out-lots on the east, was left out in the plat, apparently as part of a public highway, making, with the thirty-three feet immediately north of the section line, a public road sixty-six feet wide. The making of this plat, to which the proprietor of the land was not a party, was not a dedication of the strip thirty-three feet wide for the purposes of a street. In fact, on April 3, 1867, the owner of the property, the Associate Land Company of Connecticut, ignoring the plat, conveyed the strip, and also the land south of it, known on the plat as out-lot 4, as the north-east quarter of the north-west quarter of the north-east quarter of section 7, etc. It is true that in some of the subsequent deeds in the chain of title of appellees the premises were described as out-lot 4 in the city of Minonk. But even if it be regarded that the giving and accepting of these deeds are tantamount to offers to dedicate, yet an acceptance by the city is as essential to a valid dedication as is an offer by the owner of the property, and we do not find in this record evidence of any such acceptance or evidence of any matter of estoppel. The little work that was done in 1870 or 1871 was at the railroad crossing on the railroad right of way, and was not on, but west of, the strip of ground in question, and was long prior to the first of the deeds that described the premises as out-lot 4, and of course had no reference to and was not an acceptance of any offer to dedicate impliedly made by such deeds. Besides this, even if we should assume that the strip of ground thirty-three feet wide and immediately south of the section line is a public highway or

part of a public highway, yet appellants would have no authority to interfere with the possession thereof by appellees. As we have already seen, their jurisdiction as highway commissioners does not extend to streets or public roads within the territorial limits of the city of Minonk, but, on the contrary, the authority of the city over such streets and roads is exclusive. And here the city is not a party to the suit, and, so far as appears, is not claiming, and has never claimed, that said thirty-three feet of land is any part of a public highway, and has not attempted to interfere with the possession of appellees or with that of their ancestor.

It is claimed by appellants that Robert Gray was the owner of the west half of the south-east quarter of section 6, lying north of the road in controversy, and that as early as 1860 he threw out thirty-three feet of his land as part of a public highway, and that subsequently, but as early as 1869, he set out a hedge fence on the north line of the road that he had thrown out, and that thus there was a common law dedication of this north thirty-three feet for a public road; and it is further claimed that for more than twenty years said strip of land was recognized and used by the public as a public road. These claims are contested by appellees. Without any critical examination of the very voluminous evidence found in the record, we may, in the view we take of the case and for the purposes of the decision, assume the correctness of these contentions of appellants, and that said north thirty-three feet of land was for more than twenty years a public highway.

But the commissioners of highways of the town of Minonk had the right and authority to vacate the public highway upon said thirty-three feet of ground within the township, provided it was done in conformity with the requirements of the statute in that behalf. Section 31 of the act in regard to roads and bridges in counties under township organization provides that the commissioners

may alter, widen or vacate any road, or lay out any new road, in their respective towns, when petitioned by any number of land owners not less than twelve, or two-thirds of the land owners residing in such town within two miles of the road so to be altered, widened, vacated or laid out. (2 Starr & Curtis' Ann. Stat. p. 2146.) It appears from the record that in 1887 there was presented to the commissioners of highways of the town a petition signed by some sixty land owners residing within two miles of the road known as the road beginning at the north-east corner of section 7, township 28 north, range 2, east of the third principal meridian, in the county of Woodford, State of Illinois, running thence west along the north line of said section 7 to the north-west corner of the north-east quarter of said section 7, petitioning them to vacate all that portion of the said road lying west of the Minonk cemetery. It also appears from the record that on March 8, 1887, notice was given of a meeting to be held on March 19, 1887, to hear reasons for and against the vacation of said road, and it also appears from the record that on the 19th day of March, 1887, at a meeting of the commissioners of highways, said commissioners, or a majority of them, made, signed and sealed an order wherein it was ordered and determined that all that portion of said road lying west of the Minonk cemetery and east of the west line of the Illinois Central railroad land, "in said town, be and the same is hereby vacated and discontinued."

It is insisted that the commissioners had no power to vacate that portion of the highway that they assumed to vacate, and that all their acts in that direction were illegal and void, first, because a portion of the highway was within the corporate limits of the city of Minonk; second, because the petition and order did not confine the attempted vacation to that portion of the highway over which the commissioners had control, but attempted to embrace the whole; and third, that the proceedings were invalid, because neither the petition nor the order showed

jurisdiction on the part of the commissioners to act, it being the law that highway commissioners have no power over any portion of the streets in incorporated cities or villages.

The petition did not, in terms, ask that any portion of a street or road located within the limits of the city of Minonk should be vacated, and the order did not, in terms, vacate any portion of a road or street in said city, and neither the petition nor the order stated the width of the road to be vacated. If we are right in our conclusion that there was a public road immediately north of the north boundary line of the city and within the township, and no public street or road within the city and immediately south of that line, then it is very plain that all that the commissioners vacated or assumed to vacate was a road thirty-three feet wide that was outside of the city limits and within their control and jurisdiction. Even if there was a street thirty-three feet wide within the corporate limits of the city, and also a road of the same width immediately north of it and outside of said limits, yet the order of the commissioners simply was to vacate and discontinue that portion of the road "in said town" that lies west of the cemetery and east of the west line of the railroad land. In respect to the matter of public highways, the jurisdiction of the commissioners of highways of the town of Minonk extended only to such highways or portions of highways as were not included within the boundaries of the city of Minonk. In contemplation of law the public streets and roads within the corporate limits of the city were not in the town of Minonk. The qualifying clause in said order, "in said town," expressly confines the action that was taken by the commissioners to a road or portion of a road within the township, and not within the city. Indeed, it is not to be presumed, or taken as matter of legal intendment, that the commissioners assumed to do that which they had no authority or jurisdiction to do.

158—15

But we may regard the matter even from the stand-point that the commissioners intended and assumed to vacate not only the portion of the road that was within their jurisdiction, but also that portion of it that was within the municipality, and therefore not within their jurisdiction. Were their actions in the premises and the order made by them, for that reason, mere nullities? It seems to us not. Where more is done than ought to be done, that portion for which there was authority shall stand, and the act shall be void *quoad* the excess only. (Broom's Legal Maxims, *131.) In *Earll* v. *City of Chicago*, 136 Ill. 277, we held that where one attempts to dedicate a public street sixty-six feet in width, he having title to but half of such street, and the dedication of thirty-three feet of the street fails, the dedication will hold good as to the other half of the street, that being the extent to which the dedicator had power to make a dedication.

It is further claimed by appellants, that to give the highway commissioners jurisdiction to vacate a road the petition must affirmatively show that at least twelve of the signers of the petition are land owners in the town, or that two-thirds of the land owners in the town resid-ing within two miles of the road signed the petition; that the petition involved in this case did not state that the petitioners were *land owners in the town of Minonk*, but simply stated that it was signed by more than twelve land owners residing within two miles of the portion of the road proposed to be vacated; and that the order made by the commissioners and entered of record did not state that the petitioners were such land owners, but simply recited that a petition was presented by certain designated persons, and that the petitioners were "land owners residing within two miles of said portion of said road." The contention is, not only that the fact that either a sufficient number or the required proportion of the land owners in the town are petitioners is jurisdic-

tional, but that it must affirmatively appear from the record made in the matter of the vacation.

The case of *People ex rel.* v. *Madison County,* 125 Ill. 334, relied on by appellants, simply holds that the statute requires commissioners of highways "to keep a correct record of their proceedings at all meetings," and that such record is the only lawful evidence of the proceedings of such commissioners. Here the action had by the commissioners was the making of an order that the road be vacated, and that order fully appears of record; and the evidence shows that everything was done in the premises that is required to be done by sections 34 and 35 of the act in regard to roads and bridges in counties under township organization. The petition to vacate a road that is here in question contained everything that is required to be set forth therein by section 32 of the statute. While the Road law provides that the petition shall be signed by a number of land owners not less than twelve, or by two-thirds of the land owners residing in the town within two miles of the road to be vacated, yet it does not require that the fact that the petition is so signed shall appear or be recited upon the face of the petition. The altering, widening, vacating and laying out of roads is not an exercise of judicial powers, and hence it is not sound law to say that no presumption will be indulged in favor of the validity of such proceedings. The highway commissioners are vested by the statute with exclusive jurisdiction over all matters relating to roads in their respective townships. The rule in this State has always been, that in the matter of laying out, opening, altering, widening and vacating roads, the presumptions are all in favor of the regularity and validity of the various steps and proceedings that are antecedent and preliminary to the entry of the order laying out, opening, altering, widening or vacating such roads, but subject to rebuttal by any person questioning the validity of such proceedings. And these prior proceedings may

be either attacked or sustained by parol evidence. *Nealy*
v. *Brown*, 1 Gilm. 10; *Ferris* v. *Ward*, 4 id. 499; *D·imoss* v.
*Francis*, 15 Ill. 543 ; *Town of Lewiston* v. *Proctor*, 27 id. 414;
*Warne* v. *Baker*, 85 id. 382; *Waddle* v. *Duncan*, 63 id. 223 ;
*Henline* v. *People*, 81 id. 269.

The fact that, as a part of proceedings in 1887 vacat-
ing the road, Miner T. Ames, the ancestor of appellees,
paid to the town $150 in money, and executed and deliv-
ered to the commissioners of highways of the town of
Minonk, and their successors in office, a deed to another
road, seems to be of no particular importance.   Such an
arrangement was authorized by section 51 of the statute
in regard to roads and bridges in counties under town-
ship organization.

It may be further remarked that the proceedings taken
by the commissioners of highways in 1892 to lay out a
public road over the strip of ground here in controversy
is a clear admission and most potent evidence that there
was no public road there at that time.   *Town of Princeton*
v. *Templeton*, 71 Ill. 68; *City of Chicago* v. *Hill*, 124 id. 646.

For the reasons herein stated the decree of the circuit
court is affirmed.
                                           *Decree affirmed.*