## BOARD OF COMMISSIONERS OF SPINK COUNTY et al. v. CHICAGO, M. & ST. P. RY. CO.

Pol. Code, § 1229, subd. 7, provides that the council of a city shall have power to lay out and open streets. Subdivision 26 declares that it may also require railroads to construct crossings of streets and public roads within the limits of the city. Section 1724 provides that the council shall have the same power conferred upon town supervisors. **Held,** that jurisdiction to compel a railroad company to construct a crossing over a section line highway within the limits of an incorporated city crossed by the company's railroad was in the city council, and not in the county commissioners.

The power conferred on county commissioners by Civ. Code, §§ 527-531, to compel railroads to construct crossings over section line highways, is vested in them as a board of county commissioners, and not as a special tribunal designated for such purpose.

(Opinion filed October 3, 1911.)

Appeal from Circuit Court, Spink County. Hon. ALVA E. TAYLOR, Judge.

Proceedings by the county commissioners of Spink county on the petition of J. M. Miles and others to compel the construction of a crossing over the right of way of the Chicago, Milwaukee & St. Paul Railway Company in Spink county, S. D. From a judgment of the circuit court affirming an order of the county commissioners requiring the railroad company to construct the crossing, it appeals. Reversed.

*Elliott & Stilwill,* for appellant. *Wm. Issenhuth, State's Attorney,* for respondents.

CORSON, J. This is an appeal by the defendant from a judgment of the circuit court affirming an order made by the county commissioners of Spink county requiring said defendant to construct a crossing over a section line highway crossed by the defendant company's railroad.

The proceedings were instituted under the provisions of sections 527 to 531, inclusive, of the Civil Code, which provides, in substance, as follows: Whenever five electors, residents upon a traveled highway upon any section line in this state over or across which any railroad company may have a track or operate a line of railroad, shall petition such company to construct a crossing

where its line of railroad crosses said highway, it shall be the duty of such railroad company within 30 days to construct the same. And, upon its refusal to so construct such crossing, the county commissioners, upon being notified of such refusal, shall upon 10 days' notice require the railroad company to show cause, if any, why it shall not be compelled to construct such crossing. And upon the hearing of such order, if, after a full investigation and consideration of all the circumstances surrounding the matter, the county commissioners conclude that the public welfare and convenience demand the construction of such crossing, an order directing the construction of such crossing signed by the chairman of the board of county commissioners and attested by the county auditor shall be served upon said railroad company. And, in case the said railroad company refuse or neglect to construct such crossing within 30 days thereafter, the board of county commissioners shall cause such crossing to be constructed, and shall be entitled to recover of the said railroad company the amount necessarily expended in the construction of such crossing. The board of county commissioners having made such an order, after a full investigation, the defendant refused to comply with the same, and appealed from said order to the circuit court, which court, as before stated, affirmed the order made by the board of county commissioners. The trial in the circuit court was had upon an agreed statement of facts, in which it was stipulated that the crossing so ordered to be made by the company was at a point within the limits of the city of Redfield in said county. The facts found by the court are substantially the same as those submitted by both appellant and respondents.

The conclusions of law were made by the court in favor of the respondents, but those proposed on the part of the appellant upon said facts, and which the court refused to adopt, are as follows: "(2) That the public highways in question, upon its inclusion within the municipal boundaries of the city of Redfield, Spink county, S. D., on the incorporation of the said city, became ipso facto a street and subject to municipal control. (3) That the board of county commissioners of said Spink county have not now and at

the time of making the 'order set out in the above findings of fact had no jurisdiction over the highways or street at the place in question. (4) That the said board of county commissioners therefore had and now have no jurisdiction over the subject-matter in issue herein, and that the appellant is entitled to a decree of this court declaring and adjudging the said order of said board of county commissioners to be null and void for want of jurisdiction." These conclusions of law proposed by the appellant, refused by the court, were duly excepted to by the appellant.

The appellant contends that, as the crossing was within the limits of the city of Redfield, the city council of that city had exclusive jurisdiction over the subject of this crossing, and that the board of county commissioners was without jurisdiction to take any action in the matter. We are inclined to take the view that the appellant is right in its contention.

[1] By section 1229, subd. 7, Pol. Code, it is provided that the city council shall have power to lay out, establish and open streets, etc.; and by subdivision 26: "To require railroad companies to fence their respective railroads, or any portion of the same, and construct cattle guards, crossings of streets and public roads, and viaduct or overhead crossings, and keep the same in repair within the limits of the city." And by section 1724 it is provided that the city council shall have the same powers and duties conferred and imposed upon town supervisors, and, in addition, it shall be the duty of the city council to appoint some qualified elector of each road district in the city to be overseer of roads for such district. And by section 1535 it is provided: "The territory embraced within the limits of any incorporated town in this state shall constitute a road district for the purpose of levying and collecting the highway labor and road tax within the same, which said road district shall be known as the "Independent road district of the town of ———," giving to each such district the name of such incorporated town. It will thus be seen that the city council is vested with full power and authority to manage and control the streets and highways of the city within city limits, and to require railways operating roads within such city to con-

struct crossings in such manner as said council may deem proper, and, while such control over its streets and highways is not declared to be exclusive, that it has exclusive control over the same necessarily follows from the provisions of the law vesting it with authority over the same.

It is contended by the respondents that as it is provided by section 527 that "whenever five electors, residents upon a traveled highway upon any section line in this state over or across which any railroad company may have a track or operate a line of railroad, shall petition such company," the law is general in its character, and vests the board of county commissioners with authority to make the order specified, whether the section line highway is without or within the limits of the city, and that, therefore, the board had jurisdiction to make the order requiring the defendant to construct the crossing notwithstanding the crossing was within the city limits, but we are unable to agree with counsel in this contention. The law giving jurisdiction to the board of county commissioners to act must, we think, be construed as applying only to highways without the city limits, as any other construction would necessarily produce great confusion and unnecessary friction between the board of county commissioners and the city council. The learned author on municipal corporations (28 Cyc. 837) says: "A public highway in rure, upon its inclusion by incorporation or annexation, within municipal boundaries, becomes ipso facto a street, and subject to municipal control." And on page 853 the author says. "Except where otherwise provided by statute, county authorities have no jurisdiction over streets in a city." And on page 943 the learned author says: "General statutes frequently give to some county board or corresponding body power to control all highways within its jurisdiction, without excepting streets. It is well settled, however, that if a city be given power to control streets, its exercise of that power is exclusive, and a county board acting under a general road law will have no jurisdiction within its borders." In McGraw v. Stewart, 51 Kan. 185, 32 Pac. 896, the learned Supreme Court of Kansas, in discussing the question of the

powers of the city council and board of county commissioners, says: "The Legislature has full power to provide for the establishment and control of highways within and without the limits of cities. Outside of cities the control of the same is placed in county and township officers, while within the city absolute and undivided control is given to the city officers. * * * In the nature of things, there can be no divided control of the streets within the limits of a city, and in the whole course of legislation there is nothing indicating a different treatment or control of the highways and streets brought in by annexation and those which were in the city previous to annexation"—citing City of Eudora v. Miller, 30 Kan. 494, 2 Pac. 685; Commissioners of Shawnee Co. v. City of Topeka, 39 Kan. 200, 18 Pac. 161.

In Ottawa v. Walker, 21 Ill. 605, which is cited with approval in the case of Waynesville v. Satterthwait, 136 N. C. 226, 48 S. E. 661, speaking of the power to control the streets vested in the town authorities, it is said: "The power in its very nature would seem to be inconsistent with its joint or concurrent exercise by the two bodies, and even if the city charter was not subsequent in date, unless it plainly appeared from the language employed that it was intended to be joint or concurrent, it would be held that the power was exclusive in the commissioners beyond the city limits, and exclusive in the common council within their jurisdictional limits, and neither have any power to perform any acts in reference to this subject beyond their respective limits. * * * The exercise of such a power by each of these bodies would necessarily lead to endless strife and confusion, which the Legislature never could have intended to produce by these provisions." In Cross v. Mayor, 18 N. J. Eq. 305, the learned Court of Errors and Appeals of New Jersey held, as appears by the head note, that: "The general act relating to roads does not apply to towns or cities the charters of which confer on the corporations the authority to regulate the streets." And in its opinion the court says: "But it has never seemed to me a matter susceptible of doubt that in case a city charter contains a special provision, putting the streets in charge of the officers of the corporation, such

provision excludes the common scheme for constructing and keeping up highways in the townships, and all its concomitant regulations. In conformity with the well-known rule of law, the general legislation on the subject gives place to the special legislation on the same subject." And in State v. Mayor, 33 N. J. Law, 57, the Court of Errors and Appeals of New Jersey says: "The argument is entitled to much force, as applicable to incorporated places where the charters are silent on the subject of the power of the municipal authorities to regulate the streets. But, when the charter of a city or town expressly vests the regulation and control of the streets and highways in the corporation, the argument is entitled to no weight." Anderson et al. v. Endicutt et al., 101 Ind. 539; In re Vacation of Osage Street, 90 Pa. 114; Shields et al. v. Ross et al., 158 Ill. 214, 41 N. E. 985; In re Piscataway and Bridgewater Townships, 54 N. J. Law, 539, 24 Atl. 759; Norwood et al. v. Gonzales County, 79 Tex. 218, 14 S. W. 1057; In re South Chester Road, 80 Pa. 370; Gallaher v. Head, 72 Iowa, 173, 33 N. W. 620; Commissioner of Highways of Paw Paw v. Willard, 41 Mich. 627, 3 N. W. 164; Wabash Ry. Co. v. Defiance, 52 Ohio St. 262, 40 N. E. 97; Law v. San Francisco, 144 Cal. 384, 77 Pac. 1014; Genesee v. Latah County, 4 Idaho, 141, 36 Pac. 701; Blocker v. State, 72 Miss. 720, 18 So. 388; Cherry v. Town of Keyport, 52 N. J. Law, 544, 20 Atl. 970; Cross v. Mayor, 18 N. J. Eq. 305; People v. Ry. Co., 118 Ill. 520, 8 N. E. 824.

While the cases last cited do not pass upon the identical question presented by this appeal, they indirectly support the position contended for by the appellant.

[2] It is contended by the respondent that the power conferred upon the board of county commissioners in relation to railroads crossing section line highways is vested in that board as a special tribunal to determine such question, but this court, in the case of Board of County Commissioners of Davison County v. Chicago, M. & St. P. Ry. Co., 26 S. D. 57, 127 N. W. 728, held adversely to the respondent, and that the board was vested with the

power to act. as a board of county commissioners, and not as a special tribunal designated for that purpose.

The judgment of the circuit court is reversed, and that court is directed to enter judgment dismissing the proceedings.