NORTHWESTERN BELL TELEPHONE COMPANY, a corporation, Plaintiff and Respondent,

v.

CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, Defendant and Appellant.

No. 11761.

Supreme Court of South Dakota.

Sept. 22, 1976.

A. D. Sommervold of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendant and appellant.

May, Johnson & Burke, Sioux Falls, for plaintiff and respondent.

WINANS, Justice.

This is an appeal from an order granting partial summary judgment to plaintiff pursuant to SDCL 15–6–54(b). Defendant contends on appeal that the trial court was without jurisdiction to enter such an order because jurisdiction over the matter in controversy lies with the Public Utilities Commission. We agree.

Both plaintiff and defendant in this action are common carriers as defined by SDCL 49–3–1. Plaintiff, Northwestern Bell Telephone Company, is an Iowa corporation authorized to do business in South Dakota as a telephone company. Defendant, Chicago and North Western Transportation Company, operates and maintains railroad lines in this state. In the course of its operations it is necessary for defendant to lay tracks which cross the streets, alleys, roads, and highways. One such crossing is located between 14th Street and 17th Street in Sioux Falls, South Dakota, where the track crosses Dakota Avenue, a public road.

As part of its telephone and communication system, plaintiff has maintained two buried conduits within the public right-of-way of, and parallel to, Dakota Avenue. In September 1974 plaintiff informed defendant by letter that it planned to place an additional conduit beneath the railroad tracks at the Dakota Avenue crossing. Preliminary sketches of the proposed undercrossing were sent to defendant for the purpose of obtaining its approval. In October defendant notified plaintiff not to proceed with construction until a license agreement between the parties could be worked out. Plaintiff started work without such an agreement, however, and commenced this action for a declaratory judgment, seeking a declaration that a license agreement with defendant was not required for any construction within the public right-of-way.

After service and filing of responsive pleadings, plaintiff moved for summary judgment. Based on the pleadings, interrogatories, admissions, and affidavits before it, the trial court granted partial summary judgment to plaintiff. The judgment was later amended to include the determination and direction required by SDCL 15–6–54(b), to facilitate immediate appeal. The trial court found that plaintiff was authorized to use public grounds, streets, alleys, and highways in the state, subject to the control of the proper authorities, and was not required to obtain a license agreement from defendant for such construction. It also found that the Dakota Avenue installation in 1974 was in all aspects legal. The court further ordered that the question of compensatory and punitive damages raised by defendant was to go to trial.

The main thrust of defendant's assignments of error is that the trial court was without jurisdiction to enter the order because this is a matter within the jurisdiction of the Public Utilities Commission. The defendant contends that plaintiff should be required to exhaust its administrative remedies before seeking the aid of a court of law.

Telephone companies are given the right to use public grounds in this state for the construction of their lines by virtue of SDCL 49–32–1. The limitation stated in the statute is that the right of use is "subject to the control of the proper authorities . . .." Plaintiff asserts that the only proper authority in this case is the city of Sioux Falls. Indeed there is statutory support for that contention. SDCL 9–35–1 gives municipalities the power to regulate the placement of telephone poles and wires in the public grounds, streets, or alleys. Sioux Falls has exercised this power through the enactment of Ordinance No. 297, which allows the telephone company to use the streets and alleys of the city to lay down and maintain underground conduits. Thus it is plaintiff's position that the only issue involved in this case is one of law—statutory interpretation of the telephone company's authority to use the public right-of-way in laying its underground conduits. As a question of law, plaintiff concludes that the issue was properly brought before the trial court for resolution.

■ It is true that it is not the function of the Public Utilities Commission to decide issues of law. "The Public Utilities Commission is an administrative body authorized to find and determine facts, upon which the statutes then operate. It is not a court and exercises no judicial functions." *Application of Svoboda*, 1952, 74 S.D. 444, 447, 54 N.W.2d 325, 327. There is, however, more than a simple issue of law to be dealt with in this case. Defendant, by way of counterclaim, has raised the issue of the threat to the safety of its crossings because of the present and future construction by the telephone company. This presents issues beyond the simple case of statutory construction that plaintiff contends is determinative of the case. The issue is not merely one of use of the public right-of-way; it includes the potential hazard to the public at large that may result when the use of a public right-of-way by one public utility interferes with the services provided the public by another utility. In such instances jurisdiction properly lies with the Public Utilities Commission.

■ The Public Utilities Commission is given general supervisory power over all common carriers except street railways. SDCL 49–3–4.[1] This includes the power to investigate violations of state law by any common carrier and the power to order the repair of any unsafe facility. SDCL 49–3–5 to 7. "[P]ublic service 'commissions are generally empowered to, and are created with the intention that they should, regulate public utilities insofar as the powers and operations of such utilities affect the public interest and welfare.'" *Northwestern Bell Telephone Company v. Hagen,* 1975, N.D., 234 N.W.2d 841, 845, citing 64 Am.Jur.2d, *Public Utilities,* § 232, at p. 740. Railways in this state are declared public highways subject to legislative control. S.D.Const., Art. XVII, § 15. Control over the safety of railroad crossings is a matter clearly placed within the jurisdiction of the Public Utilities Commission. SDCL 49–19–22; chapter 31–27. It also includes approval of plans and specifications for any crossings at, above, or below the grade. SDCL 31–27–3.[2] This control also extends to jurisdiction over the use of the railroad right-of-way by other public utilities. SDCL 49–7–3. The safety of railroad crossings is a matter of statewide concern that should not be left to the individual regulations of various municipalities. *Union City v. Southern Pacific Co.,* 1968, 261 Cal.App.2d 277, 67 Cal.Rptr. 816. It is a matter affecting public safety and needs the uniformity of regulation possible under the auspices of the Public Utilities Commission. See also *Pennsylvania Public Utility Commission v. Borough of Souderton,* 1967, 210 Pa.Super. 22, 231 A.2d 875. The controversy in this case clearly relates to the safety of railroad crossings; we hold that it is a matter within the jurisdiction of the Public Utilities Commission.

■ The great majority of authorities holds that when authority is delegated to an administrative body in a certain area, such delegation is primary and exclusive unless a contrary intent is clearly manifested by the legislature. *Elk Run Telephone Co. v. General Telephone Co.,* 1968, Iowa, 160 N.W.2d 311. No contrary intent is reflected in the South Dakota statutes on the subject. On the contrary, SDCL chapter 49–14 provides for procedures to be followed on appeals from matters within the jurisdiction of the Public Utilities Commission. Under the doctrine of primary jurisdiction, courts will not determine a controversy involving an issue within the jurisdiction of an administrative agency prior to the resolution of that question by the agency involved, when it is a matter that involves the exercise of discretion requiring the special knowledge, experience, and services of the administrative body; when it involves a determination of technical and intricate matters of fact; or when a uniformity of ruling is essential to comply with the purposes of the regulatory statute being administered. *Northwestern Bell Tel. Co. v. Hawkeye State Tel. Co.,* 1969, Iowa, 165 N.W.2d 771.

■ The question of the safety of railroad crossings is one within the jurisdiction of the Public Utilities Commission for the reasons discussed above. It is also an area where a uniformity of ruling is essential to the public safety. *Hawkeye State Tel. Co., supra.* This is clearly a matter that should be dealt with initially by the Public Utilities Commission. The proper procedure for presenting this type of question to the Public Utilities Commission is set out in SDCL 49–13–1. That section authorizes a petition to be filed with the Commission complaining of anything done or omitted to be done in contravention of title 49, including a statement of any damages. SDCL 49–13–14 goes on to authorize the Commission to determine and adjudge the extent of any damages and to enter an order based upon their resolution of the complaint. Having decided that the Commission has primary

---

1. It is undisputed that both parties are common carriers. SDCL 49–3–3; 49–31–2.

2. SDCL 31–27–3 provides:

"No crossings at, above, or below grade, shall be established except under plans and specifications to be approved by the public utilities commission."

jurisdiction over this matter, we also hold that this jurisdiction includes the power to settle the damages issue. Therefore, we reverse the order of the trial court, and dismiss plaintiff's complaint for lack of jurisdiction.

DUNN, C. J., WOLLMAN, J., and FOSHEIM, Circuit Judge, concur.

COLER, J., dissents.

FOSHEIM, Circuit J., sitting as member of the court.

ZASTROW, J., not having been a member of the court at the time this case was orally argued, did not participate.

COLER, Justice (dissenting).

I would affirm the decision of the trial court.

The majority opinion, in its attempt to single out specific sections within the text of the public utility law covering in excess of 450 pages, overlooks contrary law relating to control of railroad crossings under SDCL 31–27. We need not depend upon decisions of courts of other states predicated upon laws distinct to their state, such as California, North Dakota, Pennsylvania and Iowa, but should attempt to analyze our own codified laws. This court should recognize that Title 49, among all of the 62 titles within the South Dakota Codified Laws, is the title which contains the most surplusage and the most archaic language within our law and that SDCL 49 has pyramided from the inception of railroads without taking into account changing conditions over the years or the effect of other legislation.

The majority opinion concludes that the safety of railroad crossings is a matter of statewide concern and should not be left to the individual regulation of various municipalities and cites a California case. SDCL 31–27–4 and 31–27–5, as construed by this court in *Board of Commissioners, Spink County v. Chicago, M. & St. P. Ry. Co.*, 1911, 28 S.D. 44, 132 N.W. 675, along with the attorney general's rulings 1921–22, pp. 62–63 and 1923–24, p. 335 construing these statutes, recognizes the duty of not only the Department of Transportation but also the boards of county commissioners and, indeed, city commissioners, where a city crossing is involved, to eliminate hazards of railroad crossings with public highways. I perceive no need for this court to repeal these statutes by decision.

The majority opinion cites SDCL 49–7–3 as authority for primary jurisdiction being in the Public Utilities Commission. No doubt the commission has the power and also the duty to promulgate rules in this area but it has failed to do so. A reading of the 1974 publication of the Administrative Rules of South Dakota, together with the 1975 supplement thereto, discloses no rule or regulation which to me indicates that the public utilities commission has fulfilled its duty under SDCL 49–7–3 to the extent that it is authorized and mandated to provide standards for such crossings. Until the commission has done so, the city's jurisdiction cannot have been said to be preempted.

While I acknowledge that the general supervision of utilities is provided for in SDCL 49–3–4, I am convinced that SDCL 49–3–23, which reads as follows, is controlling:

"49–3–23. Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the public utilities commission or may bring suit on his own behalf for the recovery of damages for which any common carrier may be liable under the provisions of chapters 49–3 to 49–12, inclusive, in any court of this state of competent jurisdiction, but such person shall not have the right to pursue both of such remedies at the same time."

This statutory provision gives a person (including the appellant railroad company, SDCL 2–14–2(16)) claiming damages to its property interest, in this case a fee title, on account of an act of a telephone company (a carrier by definition, SDCL 49–3–1) an option to proceed either in the courts or with the Public Utilities Commission. In this case the appellant has elected, by its counterclaim, to litigate the matter of damages

in the circuit court, as is its right. Appellant cannot have it both ways and the decision of the trial court should be affirmed.

I would hold, based upon the counterclaim of appellant which invoked the court's jurisdiction under SDCL 49–3–23, that the appeal must be dismissed. Appellant is not aggrieved by the judgment. *Woods v. Pollard,* 1900, 14 S.D. 44, 84 N.W. 214; *Severin v. Medearis,* 1923, 46 S.D. 408, 193 N.W. 138; *Nilsson v. Krueger,* 1943, 69 S.D. 312, 9 N.W.2d 783. I would affirm the trial court on the remaining issues by holding that the circuit court, under SDCL 21–24, made a proper determination of the rights of the respective parties.