Bueg, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued June 12, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Samuel M. Baker*, with him *English, Gilson, Baker and Bowler*, for appellant.

*William A. Donaher,* Assistant Counsel, with him *Thomas M. Kerrigan,* Counsel, for Pennsylvania Public Utility Commission, appellee.

*Barney Bernard,* with him *Evans, Johnson, Scarpitti & Bernard,* for Harborcreek Township, appellee.

*Irving O. Murphy,* with him *Gifford, Graham, MacDonald & Illig,* for railroads, appellees.

*Howard N. Plate,* with him *Quinn, Leemhuis, Plate and Dwyer,* for railroad, appellee.

OPINION BY GUNTHER, J., September 11, 1958:

This appeal is by O. C. Bueg, individually and doing business as Arrow Pattern and Engineering Company from the order of the Pennsylvania Public Utility Commission which granted the right to The New York Central Railroad Company, The New York, Chicago and St. Louis Railroad Company, The East Erie Commercial Railroad Company and Harborcreek Township of abolishing a grade crossing at Nagle Road and the creation of a crossing at Walbridge Road in Harborcreek Township in Erie County, and from the refusal of the Commission to grant a rehearing on application of appellant. The old crossing at Nagle Road is the dividing line between Harborcreek Township and Lawrence Park Township and the crossing itself was within the geographical limits of both townships.

On or about April 20, 1954, the Township of Harborcreek, together with the three railroads mentioned, jointly applied to the Commission for permission to close the unprotected grade crossing because of the dangerous character of the crossing. Eleven tracks of the three railroads crossed Nagle Road at this crossing. After the filing of this application, Harborcreek Town-

ship supervisors determined that the public would not be served by the closing of this crossing unless the Walbridge Road crossing were constructed. Accordingly, the said Township and the three railroads joined in an amendment to the application, agreeing that Walbridge Road would be a safer and more accessible crossing than Nagle Road.

The only protestant to the closing of Nagle Road crossing is the appellant who is engaged in the pattern and casting manufacturing business on the west side of Nagle Road. Appellant makes no shipment by railroad from his plant and since the summer of 1956 has had only two shipments of sand by rail which were picked up and delivered to the plant by truck. Lawrence Park Township, while not joining in the application here involved, did not make any real opposition to the closing of Nagle Road. After a full and extensive hearing, the Commission's order, dated October 21, 1957, granted the right to construct the grade crossing at Walbridge Road and, upon completion of the same and opening the same to public use, authorized the closing and vacation of the crossing at Nagle Road.

While these hearings were conducted, a petition was presented to the Quarter Sessions Court of Erie County in which permission was sought to change the boundaries of Harborcreek and Lawrence Park Townships, the effect of which, if granted, would have placed a strip of land 300 feet by 400 feet, including the Nagle Road crossing, within the boundary of Harborcreek Township. This petition was denied. Mention of this side issue is referred to only for the reason that appellant used this refusal to modify the boundary lines as his sole reason for requesting a rehearing.

Appellant's contention here is that the Pennsylvania Public Utility Commission abused its discretion in ordering the abolition of the grade crossing at Nagle

Road and that the Commission should have granted his petition for a rehearing. As to the first contention, we have held on several occasions that the scope of our review is within restricted limits and the order of the Commission may not be vacated or set aside except for error of law, lack of evidence to support its finding or determination or for violation of constitutional rights. *Bridgewater Borough v. Pennsylvania Public Utility Commission et al.*, 181 Pa. Superior Ct. 84, 123 A. 2d 266, 124 A. 2d 165; *Pennsylvania Railroad Co. v. Pennsylvania Public Utility Commission*, 185 Pa. Superior Ct. 115, 138 A. 2d 279. The Commission found that the reconstruction of a protected crossing on Walbridge Road would provide a safer crossing than the one at Nagle Road. This finding as to safety was supported by substantial evidence and was not contradicted. The general manager of East Erie Commercial Railroad stated that from a safety point of view the Walbridge Road crossing was safer than Nagle Road; that Nagle Road crossing was in the middle of the New York Central Railroad yards where trains were made up; that these trains standing near the crossing can block visibility for vehicles using the crossing. The representative of New York, Chicago and St. Louis Railroad Company also expressed the same opinion. It was established that because of the extensive use of the several tracks at Nagle Road, a protected crossing would be impossible and that the roadway between the tracks could not be adequately maintained. A private citizen of Harborcreek Township testified respecting the likelihood of increasing traffic over the proposed crossing at Walbridge Road. Another witness testified that while the school buses were prohibited from using the crossing at Nagle Road because of it being an unprotected crossing and because of its poor crossing condition, they could be used over the new

crossing. Officials of Harborcreek Township and Fairfield Township Fire Companies testified to the advantages their fire companies would enjoy in the event the new crossing were authorized. In fact, all of the testimony pointed in this direction. A traffic count on May 3, 1957, during normally rush hours, developed that only nine vehicles crossed northbound and fifteen vehicles crossed southbound and that no pedestrians used the crossing in a period of more than two hours. Without attempting to pinpoint all of the evidence supporting the need for a new, protected crossing, it is sufficient to state that we find from the record that the Commission's order is amply justified and under no circumstances can be considered as arbitrary or capricious.

The second point urged upon us is that the Commission should have granted a rehearing when it was informed that the Quarter Sessions Court of Erie County refused to grant the annexation petition subsequent to the order of October 21, 1957. It is only necessary to point out that the Commission's order was not based conditionally upon the requested annexation being granted. Furthermore, at the hearing itself, the examiner was informed of the proposed petition and stated that the Commission would be in no position to know what the taxpayers would do in connection with the proposed annexation. The granting or refusal of a petition for rehearing is a matter within the discretion of the Public Utility Commission and its action will not be reversed unless a clear abuse of discretion is shown. If the evidence which is proposed to be offered was introduced into the record in some manner, a refusal to grant a rehearing cannot be considered error. *City of Philadelphia v. Pennsylvania Public Utility Commission,* 185 Pa. Superior Ct. 598, 138 A. 2d 698. Proof of the refusal of said annexation

petition would not change the results. Appellant urges that perhaps Lawrence Park Township may have protested the proposed new crossing had it known that the annexation petition would be refused. The simple answer to this conjecture is that Lawrence Park Township did not join in the petition for rehearing and has not filed an appeal in this case. Finally, we fail to see how this evidence, admitted in the answers of the intervening appellees, could possibly affect the order as previously entered. We therefore conclude that the Commission did not abuse its discretion in refusing a rehearing.

The order is affirmed.