556 A.2d 944

The Pittsburgh and Lake Erie Railroad Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued February 8, 1989, before President Judge CRUMLISH, JR., and Judges CRAIG, DOYLE, BARRY, COLINS, MCGINLEY and SMITH.

*Richard A. Porach,* for petitioner.

*Linda C. Smith,* Assistant Counsel, with her, *John B. Wilson,* Deputy Chief Counsel, and *Daniel P. Delaney,* Chief Counsel, for respondent.

*Christel L. Ertel-Kahlbaugh,* Assistant Counsel, with her, *Stephen F. J. Martin,* Assistant Counsel, and *John L. Heaton,* Chief Counsel, for intervenor, Department of Transportation.

OPINION BY JUDGE COLINS, April 5, 1989:

The Pittsburgh and Lake Erie Railroad Company (P&LE) petitions for review of an order of the Pennsylvania Public Utility Commission (Commission) which, *inter alia,* imposed the responsibility of maintaining Pier "L" and Span "B" of a bridge commonly known as the Mahoning Avenue Viaduct upon P&LE. We affirm.

The instant controversy stems from the reconstruction of a bridge which carries Mahoning Avenue, a state highway, over the Shenango River, the tracks of P&LE and Consolidated Rail Corporation and a right-of-way owned by CSX Transportation, Inc., in the City of New Castle, Pennsylvania. In 1983, an inspection was performed on the bridge. As a result of the findings, the Commission issued an Emergency Order on September 8, 1983, requiring that the bridge be posted for a maximum load limit of ten tons.

The Pennsylvania Department of Transportation (Department) submitted preliminary plans for the reconstruction of the bridge to the Commission on July 19, 1984. A field investigation was conducted which revealed the need for extensive repairs to bring the bridge up to the maximum legal load limit. On September 14, 1984, the Department petitioned to reopen this proceeding in order to facilitate reconstruction of the bridge. The Commission granted the Department's petition, approved the construction plans and ordered the Department to complete the work at its initial expense.

On May 20, 1987, a hearing was held for the purpose of determining the allocation of construction costs and the assignment of future maintenance responsibilities be-

tween the parties.[1] Administrative Law Judge (ALJ) ROBERT P. MEEHAN filed his Recommended Decision on February 16, 1988, therein imposing upon P&LE the responsibility of maintaining Pier "L" and the superstructure of Span "B" of the bridge. P&LE filed timely Exceptions to the ALJ's Recommended Decision.[2]

P&LE took exception to the ALJ's conclusion that P&LE receives a benefit from the existence of the bridge because it reduces P&LE's insurance costs. The Commission, by order and opinion adopted April 7, 1988 and entered June 1, 1988, sustained this exception, finding no evidence in the record to support this conclusion. P&LE also took exception to the ALJ's conclusion that it benefits from the existence of the bridge. The Commission noted that P&LE owns and operates seven (7) tracks under this bridge. Noting that it had also assigned maintenance responsibilities to P&LE's predecessor, the Commission stated: "[w]e find nothing in the record to warrant a change of our maintenance assignment to P&LE." Finally, the Commission found that the allocation of maintenance responsibilities to P&LE was just and reasonable and accordingly, overruled P&LE's exceptions with respect thereto.

In its order, the Commission directed, *inter alia*: [t]hat upon completion of the improvement and its opening to public use, [P&LE] shall, at its sole cost and expense, furnish all material and do all

---

[1] The parties include the Department, the City of New Castle, Shenango Valley Transportation, Buffalo, Rochester and Pittsburgh Railway Company, the Baltimore and Ohio Railroad Company, P&LE, Erie Railroad Company, the City of New Castle Water Company, Pennsylvania Power Company, the Bell Telephone Company of Pennsylvania, Manufacturers Light and Heat Company, Consolidated Rail Corporation (Conrail), CSX Transportation, Inc. (CSXT), and the County of Lawrence.

[2] Exceptions were also filed by Conrail and CSXT.

work necessary thereafter, to maintain Pier 'L' and the superstructure of Span 'B', including the bearings of said span, but excluding the concrete roadway deck, sidewalk, curbs, concrete barrier and railings of the structure.

P&LE filed a timely petition for review with this Court requesting that we overturn the order of the Commission insofar as it assigns maintenance responsibility for the bridge to P&LE. The sole issue raised for resolution by this Court is whether the Commission's decision is supported by substantial evidence.[3]

Section 2702(b) of the Public Utility Code (Code), 66 Pa. C. S. §2702(b), provides in pertinent part that the Commission "is hereby vested with exclusive power . . . to determine and prescribe, by regulation or order, . . . the manner and conditions in or under which such [rail/highway] crossings shall be maintained, operated and protected to effectuate the prevention of accidents and the promotion of the safety of the public." Under Section 2704(a) of the Code, 66 Pa. C. S. §2704(a), the Commission has the power to allocate the costs of the construction or alteration of rail/highway crossings among the parties concerned. This Court has held that in apportioning the costs, the Commission is not limited to any fixed rate, but takes all relevant factors into consideration with the fundamental requirement being that its order be *just and reasonable. East Rockhill.*

As emphasized by P&LE, one factor, among others, to be considered by the Commission is the benefit re-

---

[3] Our scope of review of the Commission's decision is limited to a determination of whether constitutional rights were violated, whether an error of law was committed, and whether the necessary findings of fact are supported by substantial evidence. *East Rockhill Township v. Pennsylvania Public Utility Commission*, 115 Pa. Commonwealth Ct. 228, 540 A.2d 600 (1988).

ceived by a party. The record contains substantial evidence to support the Commission's conclusion that P&LE derives some benefit from the reconstruction of this bridge.[4]

The record reveals that Span "B" of the bridge in question crosses above the grade of the tracks of P&LE for a distance of 306 feet. P&LE owns seven tracks at the crossing, operating three tracks beneath Span "A" and four tracks beneath Span "B".[5] One of the benefits associated with the rehabilitation of the bridge is the elimination of the ten ton weight restriction on the structure. The bridge, as reconstructed, will be able to maintain a maximum legal loading limit for the next 20-25 years. A distinct benefit to the railroads which operate under the bridge is the fact that the bridge provides for a separated crossing as opposed to an at-grade crossing. The ALJ, in the discussion portion of his Recommended Decision, noted that:

> [the Department] argues that a railroad does, in fact, benefit from a separated crossing. Some of the benefits identified by [the Department] are: 1) relief from liability for accidents and reduced insurance costs, 2) elimination of the need and maintenance for automatic signals, and 3) uninhibited use of the rail line. ... Clearly a railroad

---

[4] Substantial evidence has been defined by this Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . ." *York v. Pennsylvania Public Utility Commission*, 3 Pa. Commonwealth Ct. 270, 275, 281 A.2d 261, 263, (1971), *aff'd*, 449 Pa. 136, 295 A.2d 825 (1972).

[5] The testimony reveals that one track is a through track which runs to the City of New Castle. The remaining tracks are used to serve industries. P&LE also has trackage rights over a single track owned and operated by Conrail at this location. P&LE uses this Conrail track for emergency purposes when other tracks are unavailable for use.

does receive greater benefits from a separated crossing as opposed to a crossing at-grade.

The Commission sustained P&LE's exception with respect to any benefit to the railroad in the form of reduced insurance costs. However, the ALJ's determination that P&LE benefits from this separated crossing due to the elimination of the need for and maintenance of automatic crossing signals and the uninhibited use of its rail line stands. The Commission could reasonably conclude from the evidence that P&LE does derive benefit from this separated crossing and should therefore, aid in maintaining it.[6]

Having determined that P&LE's argument lacks merit, we affirm the order of the Commission.

### ORDER

AND NOW, this 5th day of April, 1989, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is affirmed insofar as it assigns maintenance responsibility to The Pittsburgh and Lake Erie Railroad Company.

---

[6] We emphasize that the order of the Commission did not assess any costs of bridge *construction* upon P&LE.