600 A.2d 655

**MUNICIPALITY OF MONROEVILLE, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 1991.

Decided Dec. 3, 1991.

Bonnie Brimmeier, for petitioner.

Susan M. Tomalis, Asst. Counsel, for respondent.

Gina M. D'Alfonso, Asst. Counsel, for intervenor, Dept. of Transp.

Kimberly J. Gallagher, for intervenor, Union R. Co.

Before McGINLEY and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

PELLEGRINI, Judge.

The Municipality of Monroeville (Monroeville) appeals an Order of the Pennsylvania Public Utility Commission (Commission) which directed that the Thompson Run Road Bridge in Monroeville remain closed indefinitely and assigned maintenance responsibility to the Pennsylvania Department of Transportation (PennDOT).

The Thompson Run Road Bridge was built in 1910 and carries Thompson Run Road over railroad tracks owned by the Union Railroad. The bridge is a single lane and approx-

imately 150 feet long and 15 feet wide. The deck is wood planking covered with asphalt. Based on traffic studies conducted in 1986, approximately 2,000 vehicles a day used the bridge. Projections for the year 2000 estimate the traffic flow at around 2,400 vehicles a day. Thompson Run Road lies generally north and south and crosses over U.S. Route 22 and Interstate 376. The road is a narrow, two lane asphalt paved roadway and functions as a suburban minor arterial route.

The present dispute arose from an investigation initiated by the Commission in February of 1989, regarding the maintenance responsibility for the bridge. PennDOT, Union Railroad, Monroeville and Allegheny County were all made parties to the proceeding. On April 14, 1989, the Commission entered an Emergency Order directing Penn-DOT to maintain the bridge at PennDOT's cost and expense. On May 17, 1989, a vertical crack in the web of the main girder of the structure was discovered, and an Emergency Order was issued by the Commission approving PennDOT's action to close the bridge and instructing Penn-DOT to establish appropriate detours.

Hearings were held before an Administrative Law Judge (ALJ) who issued a Recommended Decision which ordered that:

> [T]he subject bridge shall remain closed to the traveling public, without prejudice to any party to allege, *in the future,* by application, complaint, or petition, and demonstrate *that circumstances support the* renovation, *construction or reconstruction,* relocation, or abolishment of the bridge or rail-highway crossing.

(Reproduced Record (R.R.) 123a). (Emphasis added).

In addition, the ALJ recommended that PennDOT continue to maintain the bridge and inspect it at regular intervals. Although agreeing with PennDOT and Union Railroad that the bridge cannot be repaired and that a new one must be built, Monroeville filed exceptions to the ALJ's Recommended Decision with the Commission, requesting that the Commission order the bridge to be replaced imme-

diately. The Commission refused and adopted the ALJ's Recommended Decision. Monroeville now appeals the Commission's Order.[1]

Monroeville contends that the Commission's Order is not based upon substantial evidence nor is it just and reasonable. Monroeville argues that the Order fails to establish a timetable for the reconstruction of the bridge or assign future reconstruction and maintenance responsibilities. Monroeville asserts that allowing the bridge to remain indefinitely closed places a great traffic burden on the other area highways and poses health and safety risks by its continuing deterioration. Monroeville asks this Court to remand the matter to the Commission to set a timetable for the reconstruction of the bridge and to establish reconstruction and maintenance responsibilities so that funding mechanisms and work schedules can be established to facilitate the expedient completion of a new bridge.

Section 2702 of the Public Utility Code [2] vests the Commission with exclusive power to allocate costs and determine the manner in which a highway-rail crossing may be constructed, altered, relocated, *suspended* or abolished. (Emphasis added.) *See East Rockhill Township v. Pennsylvania Public Utility Commission*, 115 Pa.Commonwealth Ct. 228, 234, 540 A.2d 600, 603 (1988). The Commission is not limited to any fixed rule, but may take into consideration all relevant factors, with the only requirement being that the order is just and reasonable. *Borough of South Greensburg v. Pennsylvania Public Utility Commission*, 117 Pa.Commonwealth Ct. 361, 544 A.2d 82 (1988); *Department of Transportation v. Pennsylvania Public Utility Commission*, 79 Pa.Commonwealth Ct. 266, 469 A.2d 1149 (1983). Findings of fact made by the Commission

1. Our scope of review in appeals from orders of the Pennsylvania Public Utility Commission is limited to determining whether constitutional rights were violated, an error of law was committed, or if findings and conclusions are unsupported by substantial evidence. *Barasch v. Pennsylvania Public Utility Commission*, 507 Pa. 561, 493 A.2d 653 (1985).

2. 66 Pa.C.S. § 2702.

which are supported by substantial evidence are conclusive and may not be disturbed on appeal. *Department of Transportation.*

■ A review of the Commission's Order demonstrates that its decision to suspend the crossing by closing the bridge indefinitely was just and reasonable because the Commission balanced the benefit and harm to the traveling public and took into consideration the effect on traffic congestion, the condition of the road itself and its need for repair, and the requisite public safety concerns.

The Commission considered the condition of the road in determining the impact of the bridge remaining closed. It found that the road was not well maintained and contains a dangerous "S" curve just south of the bridge. (R.R. 109a, 119a). The Commission further found that roadway approaches to the bridge are substandard and poorly aligned both horizontally and vertically, which would need to be fixed if the bridge were replaced. (R.R. 111a, 118a). Moreover, the Commission found that the road functions as a suburban minor arterial route and is no more than a "back road" which serves only a few homes. (R.R. 110a, 119a).

The Commission also considered the impact on traffic patterns in the surrounding area if the bridge were to be suspended. The Commission found that the impact on the traffic patterns in the Monroeville area if the bridge were reconstructed would be neutral, since there are more convenient routes to travel and the opening of the bridge would just shift traffic, reducing it at some intersections and increasing it at others. (R.R. 115a–116a, 121a–122a). The Commission also found no evidence in the record that public convenience or necessity require the bridge to be immediately replaced. (R.R. 120a).

The evidence supporting the Commission's finding that public convenience and necessity did not require the immediate opening of the bridge was presented by Monroeville

itself, which commissioned a study of the traffic patterns concerning the bridge.[3]  The study stated that:

> It is our opinion that if the Thompson Run Road Bridge were reopened ... citizens would probably *not use the bridge* as a route to leave ... or travel within the Municipality.  We believe this would be true because almost all Monroeville citizens have *more convenient* routes of transportation than to travel the Thompson Run Road Bridge.

(Monroeville Exhibit No. 2;  R.R. 101a–102a).  (Emphasis added.)

In a supplement to that study, the expert reiterated the same conclusion, stating:

> In summary, overall impacts on Monroeville streets will be *neutral,* since replacement of the bridge will shift traffic, reducing problems at some intersections, while increasing it at others.

(Monroeville Exhibit No. 3;  R.R. 103a–105a).  (Emphasis added.)

The Commission also considered the safety of the traveling public and pedestrians, as well as those using the Union Railroad tracks.  The Commission found that the detours put in place by PennDOT were adequate, that there was no danger of the bridge falling on Union Railroad tracks, and that safety considerations did not compel the immediate reconstruction, replacement or removal of the bridge.  (R.R. 108a, 114a, 120a, 123a).

■  Although the Commission considered several relevant factors in making its determination to suspend the bridge indefinitely, Monroeville argues that the Commission improperly considered the fact that PennDOT did not have the current funding to reconstruct the bridge, and such consideration renders its order unreasonable.[4]  Although

3.  The study was performed by Wilber Smith Associates.  (R.R. 101a).

4.  The Commission adopted the ALJ's findings which stated that at the present time, PennDOT has not allocated any funding, drawn any design plans nor set a specific date for the repair or reconstruction of the bridge.  The ALJ further stated that PennDOT recommended that

we agree with Monroeville that the fact that PennDOT may not have current funding to reconstruct the bridge is not a proper basis on which to delay reconstruction of the bridge, *see East Rockhill Township,* 115 Pa.Commonwealth Ct. at 234, 540 A.2d at 604, the Commission's Order to suspend the bridge was based on the lack of public necessity or safety concerns, not on the lack of funding available to PennDOT.

The ALJ specifically concluded that "[n]either safety considerations nor the public convenience and necessity require the rehabilitation, reconstruction, replacement, or removal of the subject bridge." (R.R. 123a). The Commission, in adopting the ALJ's Recommended Decision, reiterated the ALJ's Order specifically stating that any party may, in the future, file a petition with the Commission and "demonstrate that *circumstances* support the ... reconstruction of the bridge." (R.R. 123a, 132a). (Emphasis added.) Since the ALJ made only specific findings regarding necessity and safety, these circumstances can only refer to either a future showing that reconstruction is needed for public convenience and necessity or to alleviate safety concerns, they do not refer to a showing of available funding for the project.[5]

Because Section 2702 of the Code vests the Commission with the exclusive authority to determine the manner in which a highway-railroad crossing is to be suspended, and the Commission considered all of the relevant factors, its Order is just and reasonable.

Accordingly, we will affirm the Commission's Order.

the bridge remain closed until the funding becomes available in 1995 under a bridge appropriations bill on which the Thompson Run Road Bridge is named. (R.R. 113a, 120a).

5. Future construction and maintenance responsibilities for the bridge will thus be determined by the Commission upon the future petition of a party in interest who demonstrates that necessity or safety compels the reconstruction of the bridge.

## ORDER

AND NOW, this 3rd day of December, 1991, the Order of the Pennsylvania Public Utility Commission, dated March 20, 1991, is affirmed.