**NORTH LEBANON TOWNSHIP, City of Lebanon, and Lebanon County, Petitioners**

v.

**PUBLIC UTILITY COMMISSION, Respondent.**

**Norfolk Southern Railway Company, Petitioner**

v.

**Public Utility Commission, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 2008.

Decided Oct. 9, 2008.

Publication Ordered Jan. 8, 2009.

Benjamin C. Dunlap, Jr., Harrisburg, for designated petitioner, Norfolk Southern Railway Company.

John E. Herzog, Asst. Counsel, Harrisburg, for respondent, Public Utility Commission.

Frederick S. Wolf, Lebanon, for respondent, North Lebanon Township.

Robert L. Ebby, Philadelphia, for intervenors, Aldi Inc. and AutoZone, Inc.

BEFORE: SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Before this Court are cross-appeals filed by Norfolk Southern Railway Company (Norfolk Southern)[1] and North Lebanon Township, the City of Lebanon and Lebanon County (collectively, Municipalities) from an order of the Pennsylvania Public Utility Commission (Commission) adopting the recommendation of the Administrative Law Judge (ALJ) that the 11th Avenue rail crossing should not be abolished and ordering the Municipalities to pay for future costs of maintaining the new crossing gates and lights at the rail crossing.

Norfolk Southern is the owner and operator of the rail line at the 11th Avenue crossing in the township which is at the center of this appeal. On February 28, 2006, Norfolk Southern filed an application with the Commission to close the 11th Avenue crossing of its railway system alleging safety issues, infrequent usage and that the crossing was unnecessarily redundant because there were other nearby crossings which were more heavily used and had better sight distances and warning devices. Norfolk Southern stated in its application that it would agree to perform the work and pay the costs to effect the abolition of the crossing to the extent that such costs would not be reimbursable by federal monies.

After a field investigation and conference, a request was made by the Commission's Rail Safety Division to have the proceeding assigned to an ALJ for a hearing on the matter. At the hearing, Norfolk Southern presented the testimony of William R. Hughes (Hughes), Manager of Grade Crossing Safety, whose duties entailed working with the Division Grade Crossing/Trespass Committees in the inspection of highway/rail grade crossings for any conditions that warranted improvements such as signals and identification of redundant crossings. He testified that the western half of the crossing was located in the City of Lebanon and the eastern half was located in North Lebanon Township. There were currently two tracks at the 11th Avenue crossing over which Norfolk Southern ran approximately 60 trains per day, including freight, intermodal, coal and road railer trains. The crossing was presently equipped with flashing lights but not with gates. Within the past five years, Hughes stated that there had been three accidents which had occurred at the crossing involving vehicle-train collisions, all occurring during daylight hours by drivers who did not stop at the crossing or who had proceeded in front of a train.[2] Two additional accidents occurred more than five years ago and were the result of drivers not stopping at the crossing.[3] He stated that it was Norfolk Southern's position that the 11th Avenue crossing should be closed because it was dangerous as the exit road from several businesses, Aldi and AutoZone, paralleled the tracks, and a person who wanted to see if a train was coming from the west would have to look sharply behind him or turn around in his seat. Also, there was a wooded area that affected a person's vision of a train approaching from the east.

---

1. Norfolk Southern is a Virginia corporation authorized to transact business in the Commonwealth of Pennsylvania. It is a freight railroad engaged in the business of the transportation of property.

2. The accidents occurred in 2001, 2003 and 2005.

3. These accidents occurred on January 3, 1979, and October 3, 1980.

Hughes also testified that the crossing was unnecessary as found by its traffic experts, Grove Miller Engineering, Inc. (Grove Miller). Norfolk Southern believed that every crossing created the potential for a driver to ignore the warning devices, so any unnecessary crossing should be eliminated, especially where there were alternatives. Hughes stated that approximately 40% of the traffic from the 11th Avenue crossing would be diverted to the Route 422 separated grade crossing to the east where there was no opportunity for a vehicle-train collision. Hughes did not believe that installing gates at the 11th Avenue crossing would eliminate the hazard because national statistics showed that 52% of all accidents at public grade crossings occurred at locations equipped with gates, lights and bells. However, if the crossing closure was not granted, Hughes believed that the best alternative was to install gates and additional lights. Hughes also testified regarding the adjacent crossings at 8th Avenue, 15th Avenue and East Street, stating that all three crossings were equipped with flashing lights and gates.

Gregory E. Creasy (Creasy), a partner and Vice President of Engineering for Grove Miller, also testified on behalf of Norfolk Southern stating that his firm conducted a traffic study to evaluate the changing travel patterns that would result if the 11th Avenue crossing were closed and to study the impact of the diversion of the traffic to the intersections—from 15th Avenue to the east, 8th Avenue to the west, and then Route 422 to the south. Based on daily traffic volume of around 1,450 vehicles per day on 11th Avenue, the results of that study indicated that approximately 60% of the traffic would be diverted to 8th Avenue and 40% would be diverted to 15th Avenue. Creasy stated that there was virtually no effect on travel times due to the crossing closure on two businesses near the crossing, Aldi and AutoZone. In the worst case scenario, travel time would increase approximately two minutes and up to .9 of a mile.

As for emergency responders in the area of the closure, Creasy stated that the study looked at hospitals as well as police and fire departments and also found minimal or no delays. Only responders from the Avon Fire Company could experience increased travel times if they were responding to a call in the area north of the railroad between 8th Avenue and 15th Avenue in North Lebanon Township or the city. However, Creasy stated that response time could be reduced by the addition of emergency vehicle preemption devices to the traffic signals at Route 422 and 15th Avenue and Route 422 and Bowman Street. Overall, it was Creasy's opinion based on the study that the surrounding roadway network could accommodate the diverted trips from 11th Avenue if the crossing was closed without an impact on the levels of service. The expected diversion of 40% of the traffic from 11th Avenue that would be expected to go east on Lehman Street to 15th Avenue would not have to cross the railroad at a crossing to access Route 422, and that the reduction in the number of trips crossing the railroad at a crossing would improve safety for traffic. On cross-examination, Creasy admitted that the delay analysis was performed in late morning and not at peak hours.

In opposition to the closing of the 11th Avenue crossing was testimony by Cody Broaddus (Broaddus), District Manager for the AutoZone store, a car parts store located in Lebanon, Pennsylvania. He testified regarding the effect the closing of the 11th Avenue crossing would have on his business stating that the store was located at 101 North 11th Avenue, on the northwest corner of the intersection of Route 422 East and North 11th Avenue. It was opened three-and-one-half years

ago and was accessible to vehicle traffic when the store decided to open. The accessibility of the location via the 11th Avenue crossing was a factor in the store's decision to open at that particular location. Broaddus stated that approximately 130 customers visited the store daily, and if the 11th Avenue crossing was closed, the customers and staff of 10 would have to travel at least an additional mile to reach the store. Further, it would affect business because customers would have to pass a competitor to reach the store by taking a different route. Lindsay Hu (Hu), District Manager for Aldi, Inc., a retail grocery store located at 105 North 11th Avenue, on the northwest corner of Route 422 East and North 11th Avenue, echoed Broaddus' testimony regarding the location and the loss of customers due to rerouting and competition. Hu also stated that the location was the deciding factor in opening the store at its current location.

Also testifying in opposition was Curtis E. Kulp (Kulp), Manager for South Lebanon Township, who stated that the 11th Avenue crossing did not lie within the municipal boundaries of South Lebanon Township. However, the South Lebanon Township transportation system benefited from the 11th Avenue crossing because it provided an additional outlet from a congested area of South Lebanon Township to the businesses and streets north of the township. Additionally, South Lebanon Township had mutual aid agreements with the City of Lebanon and North Lebanon Township, and the 11th Avenue crossing provided access for police and fire from South Lebanon Township to the north side of Route 422, the major highway through the County of Lebanon, in performance of the mutual aide and protection of the public.

Jonathan Beers (Beers), the Public Works Director and City Engineer for the City of Lebanon, testified that the city maintained the western half of the right-of-way of 11th Avenue on the southern side of the rail crossing. He stated that the City conducted a traffic study at the crossing from July 29, 2006, through July 31, 2006, and determined that it would have a detrimental effect on the businesses located off of 11th Avenue because the only entrance and exit to them would be directly onto Route 422. The 11th Avenue crossing provided an alternative for entering and exiting both Aldi's and AutoZone. Further, the closing of 11th Avenue would create two dead-end streets, and they would be difficult to maintain with street sweeping and snow plowing. It was Beers' opinion that a gate on both the north and south side of the crossing would improve safety conditions at the crossing and decrease any accidents, and the Lebanon County Metropolitan Planning Organization (MPO) had funding to install the gates.

Edward A. Brensinger (Brensinger), Road Foreman for North Lebanon Township and one of the three members of the Board of Supervisors for that township, testified that the Board of Supervisors opposed the closing of the 11th Avenue railroad closing and believed that placement of gates at the crossing along with the train signals which already existed would correct any safety issues. He stated that North Lebanon Township was willing to continue to provide financially for the road markings and signs on 11th Avenue approaching the crossing on the North Lebanon Township side. It was his belief that if 11th Avenue was closed, the township and the City of Lebanon would have a snow removal problem which they did not have currently. There would be a problem of finding a place to deposit the snow when plowing, and there would be a problem because there would not be a place to turn around at the railroad tracks. Further, there would be numerous areas impacted

because many residential areas were being developed; seven lots had been approved on Kimmerlings Road; there was an on-going development known as Briar Lake with 109 approved residential lots on 8th Avenue; and there was a current plan for a development known as Spring Creek in the approval process with another 75 lots to be built in the next five years. There was also significant acreage not yet built on but the subject of development in the future. He stated that 11th Avenue handled 1,300 vehicles per day, and it would be essential in the future to handle the overload of traffic in the area.

Thomas A. Kotay (Kotay), a transportation consultant to the MPO, also testified that the County Commissioners and the MPO believed it was necessary to keep the 11th Avenue crossing open because it was a small but critical part of a highway grid system in that part of Lebanon County. He explained that grid systems helped to evenly distribute local traffic and thru traffic, and that the roadway helped to provide direct access to local businesses and residential properties. Kotay explained that the MPO made this crossing its number one priority for funding with federal railroad crossing funds and/or federal safety funds. The MPO wanted to see signals, gates, signs and pavement markings installed at this location and was willing to provide the funds for the needed improvements. He stated that the MPO would have $133,000 in federal surface transportation crossing funds available for the work, and a portion of the $601,000 in federal Highway Safety Improvement Program funds if necessary.

Finally, Ronald J. Hull (Hull), a civil engineer employed by the Commission in the Rail Safety Division, testified that the Commission had no position regarding the closure of the crossing. However, if the crossing was to remain open, Hull suggested that gates should be installed at the crossing to enhance safety and traffic making a left turn from the driveway exiting the Aldi and AutoZone businesses onto 11th Avenue be eliminated due to limited visibility due to the existing flashing-light signal roundels at the crossing. He also suggested that an additional set of roundels could be installed facing the business driveway.

The ALJ determined that Norfolk Southern did not sustain its burden of proving that the abolition of the crossing was necessary and proper for the service, accommodation, convenience and safety of the public and recommended that it remain open. He also determined that the crossing was not so dangerous or so redundant to warrant its closing. He relied on the fact that there were only three accidents in five years at the crossing; that the rerouting of traffic to 8th and 15th Avenues would cause increased daily traffic volume on those roads and worsen the level of service and, ultimately, public safety; and that the costs of installing new signals at the 8th Avenue northbound approach to Route 422 and signal timing adjustments be made at the Route 422 and 15th Avenue intersection would be approximately $459,000, making Norfolk Southern's proposal neither economical nor a reasonable approach to address the public need. The ALJ also relied on testimony that emergency responders would experience delayed travel times during peak hours, and that they would have to compete with the vehicle traffic in the more heavily congested roads if traffic was diverted due to the rail crossing closing. Further, there would be snow removal problems for the City of Lebanon and North Lebanon Township as two dead-end streets would be created and snow plows would have to drive in reverse with little or no visibility. Also, the two municipalities would have to find a place for the

snow collected at the dead-end sections of 11th Avenue.

The ALJ recommended and ordered:

• Crossing gates be installed on both the north and south side of the rail crossing along with improved warning signs, which Lebanon County MPO stated it would pay for the gates;

• Pavement markings and an additional roundel of flashing lights pointed toward the Aldi exit be installed;

• Because Norfolk Southern already provided maintenance costs for the existing flashing lights at the crossing, and the City of Lebanon was willing to maintain the advance warning signs and pavement markings that would need to be placed at the crossing, costs for the future maintenance of the new gates and lights, including the additional roundel of flashing lights pointed toward the Aldi exits, should be borne by North Lebanon Township and the City of Lebanon because the middle of 11th Avenue was the boundary line between those two municipalities and they should share equal responsibility;

• Because no utility appeared at the hearing, but to the extent any facilities of other utility work were involved, they should be assigned future maintenance responsibilities for their own facilities at the crossing.

The Municipalities and Norfolk Southern filed exceptions with the Commission to the ALJ's decision. In response, PennDot, Aldi and AutoZone filed reply exceptions. The Commission denied all of the exceptions and adopted the ALJ's recommended decision and order. These cross-appeals by Norfolk Southern and the Municipalities followed.[4]

**I.**

**A.**

■ Norfolk Southern contends that the Commission erred in denying its application to abolish the crossing because it did not give sufficient weight to the issue of safety. It makes the same arguments before this Court as it did before the ALJ and Commission by arguing that safety concerns will not be fully addressed by the mere addition of gates because the 11th Avenue crossing has a prolonged history of accidents.[5]

■ Whether an application should be granted to abolish a crossing is dependent

4. Our scope of review of the Commission's decision and order is limited to determining whether the Commission violated any constitutional rights, committed an error of law, or rendered a decision that is not supported by substantial evidence. *Greene Township Board of Supervisors v. Pennsylvania Public Utility Commission*, 668 A.2d 615 (Pa.Cmwlth.1995).

5. Norfolk Southern again argues that the addition of gates does not fully eliminate the hazard of vehicle-train collisions because some drivers choose to ignore the warnings and drive around the gates. Further, safety problems at the crossing are exacerbated by a driveway into several commercial establishments, Aldi and AutoZone. The 11th Avenue crossing is located just north of those two retail stores, and the location of the stores' driveway in relation to the crossing draws more vehicles over the crossing than there would be without the driveway. It also presents a unique safety concern to drivers trying to leave the parking lot heading north over the tracks due to the fact that the driveway runs parallel to the railroad tracks and the lack of visibility of a train approaching from either direction with limited visibility. The only way for drivers to see trains approaching from the west in advance of crossing the tracks is to look sharply behind their cars by turning nearly completely around in their seats. Further, there is a wooded area in the other direction causing limited visibility as well. The closure of the 11th Avenue crossing would serve to improve safety because 40% of the traffic would be diverted to the Route 422 separated grade crossing and would eliminate the chance of a vehicle-train collision.

upon whether the applicant has established that the abolition is necessary and proper for the service, accommodation, convenience or safety of the public. *Borough of Bridgewater v. Pennsylvania Public Utility Commission*, 181 Pa.Super. 84, 124 A.2d 165 (1956). Factors to be considered in applying this standard include traffic congestion, access for emergency responders, any impact on businesses, and the economic feasibility of the proposed change. *Pennsylvania Public Utility Commission v. Borough of Souderton*, 210 Pa.Super. 22, 231 A.2d 875 (1967); *Bueg v. Pennsylvania Public Utility Commission*, 187 Pa.Super. 378, 144 A.2d 511 (1958). Courts will not substitute their judgment for that of the Commission when substantial evidence supports necessary findings of fact in a matter within the Commission's expertise. *Popowsky v. Pennsylvania Public Utility Commission*, 550 Pa. 449, 706 A.2d 1197 (1997).

Here, the Commission thoroughly reviewed all of the evidence submitted and considered all of the above factors in determining whether the crossing should be abolished. First, the Commission found that there was not a prolonged history of accidents, but rather three accidents over the past five years from the date of the hearing in 2006. The two accidents in 2001 and 2003 involved minor property damage ($500 and $1,000, respectively) with no police reports indicating any personal injuries, and the third accident in 2005 involved $2,000 in property damages and minor personal injury to the driver. The two accidents in 1979 and 1980 also involved minor property damages of $400 and $600, respectively. In considering whether the 11th Avenue crossing was relatively little used and a redundant closing, the Commission carefully considered the traffic study performed by Grove Miller and determined that approximately 1,300 to 1,450 vehicles used 11th Avenue daily. Because school buses passed through the

crossing at least 20 times per day on school days, the Commission concluded that the crossing was used regularly.

Again, relying on the Grove Miller traffic study, the Commission determined that by closing the 11th Avenue crossing, diverted traffic to 8th Avenue, 15th Avenue or Route 422 would only increase the daily traffic volume on those roads and worsen the level of service and, ultimately, public safety on those intersections because those streets already had high traffic volumes during peak hours. It explained that the traffic study indicated that 8th Avenue had a traffic volume of approximately 6,775 to 6,950 vehicles per day, with its northbound approach to Route 422 functioning at a failing condition during peak hours. 15th Avenue had a daily traffic volume of approximately 10,300 to 10,950 vehicles per day, with the southbound approach to Route 422 already functioning at an undesirable level of service "E" during peak hours, and the left turn movement on that approach operating at level of service "F." Lehman Street and Route 422 had daily traffic volumes of 8,650 to 8,900 vehicles and 18,350 to 18,450 vehicles, respectively. Due to real estate developments and future community growth which were likely in the future which would compound traffic even further, the diversion of traffic onto the three other streets was not an option.

In addressing access for emergency responders, the Commission stated that while all of the hospitals, police and fire stations in the City of Lebanon and North Lebanon Township were located east of 8th Avenue and west of 15th Avenue, these emergency responders still used the less traveled 11th Avenue as an alternative route when the nearby roads were congested. Because the City of Lebanon and North and South Lebanon Townships had reciprocal mutual aid agreements regarding emergency response services, the clos-

ing of the 11th Avenue crossing would have a detrimental effect on public safety because it would eliminate an alternative route for emergency responders that needed to cross the railroad tracks. As for the businesses that would be affected, the Commission pointed out that the portion of the traffic study which dealt with diverting traffic and delays was not performed at peak hours, suggesting that during peak hours, motorists would experience an increased travel time beyond the approximated two minutes per one-way trip estimated by Norfolk Southern's expert to get to Aldi and AutoZone. The Commission also considered the costs of installing new signals which would be approximately $459,500 as estimated by Norfolk Southern, and which Norfolk Southern's expert testified was a little high and that they did not actually know the cost. However, Lebanon County's witness testified that the MPO would cover the cost of installing the traffic signals.

Because the Commission considered every factor, including the issue of safety, and there was substantial evidence to support the Commission's decision, it did not err in denying Norfolk Southern's application to abolish the crossing.[6]

### B.

■ Norfolk Southern also argues that the safety concerns at the 11th Avenue crossing will not be fully addressed by the mere addition of gates as ordered by the Commission due to the fact that some drivers choose to ignore the warning and drive around the gates; the safety problems at the crossing are exacerbated by a driveway into several commercial establishments; and the location of the stores'

driveway in relation to the crossing not only draws more vehicles over the crossing than there would be without the driveway, but also presents a unique safety concern to drivers trying to leave the parking lot and head north over the tracks. Norfolk Southern argues that diverting traffic to other intersections would alleviate this problem.

■ Essentially, Norfolk Southern is arguing that public safety should be the controlling consideration in the Commission's decision. However, as stated above, whether an application will be granted depends upon whether the applicant has established that the abolition is necessary and proper for the service, accommodation, convenience *or* safety of the public. Safety is only one of the factors which the Commission considers and which the Commission did consider in this case. The Commission was cognizant that if safety required the closing of the crossing, it had the power to do so, citing 66 Pa.C.S. § 2702(f), entitled "Danger to safety" which provides: "Upon the commission's finding of an immediate danger to the safety and welfare of the public at any such crossing, the commission shall order the crossing to be immediately altered, improved, or suspended." However, based upon all of the evidence presented, the Commission did not believe that the closing was required, and it did believe that the placement of gates on both sides of the crossing, along with additional lights and pavement markings, would improve the safety of the public. It also found that the crossing was necessary for the proper service, accommodation and convenience of the public, as well as the safety of the public so as not to increase

---

6. Relying on its traffic study, Norfolk Southern also argues that the Commission did not properly consider the issue of redundancy, and that the 11th Avenue crossing is hardly used and/or that traffic can be easily diverted to other roadways. Because this issue has already been discussed and decided in the previous argument, it will not be addressed again.

traffic flow to other intersections and to prevent emergency responders from having to use alternative routes during peak hours; and it would aid municipal snow plows to operate properly instead of plowing two dead-end streets that would result from abolishing the crossing.

■ Because the Commission is not limited to any fixed formula when determining whether to abolish a rail crossing, but may take into consideration all relevant factors, with the only requirement being that the order is just and reasonable, *Municipality of Monroeville v. Pennsylvania Public Utility Commission*, 143 Pa. Cmwlth. 668, 600 A.2d 655 (1991), we conclude that the Commission has fully addressed the safety concerns relative to the 11th Avenue crossing and its refusal to approve the closing of that crossing, and the Commission's order is just and reasonable.

## II.

### A.

■ The Municipalities have filed a cross-appeal from the Commission's order arguing that the Commission erred when it determined that the future maintenance costs of the 11th Avenue crossing should be incurred by the Municipalities and not by Norfolk Southern. They point out that because the Lebanon County MPO is absorbing significant costs, it is only fair that Norfolk Southern should pay the annual maintenance costs and the future repair and replacement costs relating to improvements. The Municipalities contend that Norfolk Southern benefits from the safety upgrades because they decrease the chance of accidents and injury for which Norfolk Southern may be liable.

■ Pursuant to 66 Pa.C.S. § 2704(a), the Commission has the exclusive authority to determine who shall bear the costs associated with any work it or-

ders in a proceeding related to the abolition of a rail crossing. *Greene Township Board of Supervisors v. Pennsylvania Public Utility Commission*, 668 A.2d 615 (Pa.Cmwlth.1995). In exercising its authority, the Commission is not limited to any fixed rate with respect to the allocation of costs, but may take all relevant factors into consideration. *Id.* "The allocation of costs between the parties is within the discretion of the Commission." *Id.* at 618. In apportioning costs in rail crossing cases, several relevant factors that the Commission should consider are: 1) the party that originally built the crossing; 2) the party that owns and maintains the crossing; 3) the relative benefit initially conferred on each party with the construction of the crossing; 4) whether either party is responsible for the deterioration of the crossing that has led to the need for its repair, replacement or removal; and 5) the relative benefit that each party will receive from the repair, replacement or removal of the crossing. Id. at 619. "The Commission is not limited to any fixed rule but takes all relevant factors into consideration, with the fundamental requirement being that its order be just and reasonable." *Bell Atlantic v. Pennsylvania Public Utility Commission*, 672 A.2d 352, 355 (Pa.Cmwlth.1995).

Here, as to the first factor, the Commission made no findings regarding the party that originally built the crossing. As to the second factor, while Norfolk Southern owns and maintains the crossing, the Commission determined that under the third factor, the Municipalities derived the greatest benefit from the crossing. The Municipalities testified that the crossing was an integral part of the traffic grid; provided emergency responders with the most direct and quickest route in responding to emergencies; and provided access for local businesses. The Municipalities were aware that they were constructing a

driveway from the businesses in close proximity to the crossing creating a dangerous situation at the crossing, yet they did so without seeking Commission approval. On the other hand, Norfolk Southern wanted to abolish the crossing which the Municipalities opposed. Regarding the fourth factor, the deterioration of the crossing, there was testimony by Norfolk Southern that the crossing was in good condition. Finally, regarding the benefit to the Municipalities, the Commission found that the Municipalities most benefited because Mr. Brensinger of the North Lebanon Township Board of Supervisors testified that there would be a substantial increase in vehicular traffic due to new developments in the surrounding areas, and that the closing of the crossing would wreak havoc upon the developing communities.

Because the Commission considered all of the factors and the Municipalities were responsible in large part for the dangerous situation at the crossing by allowing access, and it will benefit the most by gating the crossing, the Commission did not abuse its discretion by ordering the Municipalities to bear all costs.

### B.

The Municipalities also contend that the Commission erred when it determined that Lebanon County rather than the Lebanon County MPO should pay the costs and expenses relating to the installation of the gates and signals at the crossing and the relocation of utilities. The Lebanon County MPO volunteered to pay for the costs of the installation of light signals and gates at the 11th Avenue crossing due to the approved use of funding from PennDot and federal sources it received for improvements of this kind. The Municipalities point out that while the MPO is an organization that exists in Lebanon County, it acts as a separate entity in that it receives federal funding and funding from PennDot for specific improvements like those proposed to be made to the crossing. Lebanon County, outside of the Lebanon County MPO, does not have access to this specific funding. Because the Commission's order improperly reflects that Lebanon County should pay for these costs when there is little or no funding available, the order should be changed to reflect that only the MPO is to pay for the installation costs.

The Commission, however, argues that Lebanon County volunteered to pay for the installation costs of the project and the MPO was to provide the funding. Whether the MPO qualifies as a municipal corporation was never established and it would have been improper for the Commission to assign costs to that organization.

Pursuant to 66 Pa.C.S. § 2704(a), the Commission is authorized to allocate crossing alteration costs to public utilities, *municipal corporations,* municipal authorities, non-profit organizations or the Commonwealth. "Municipal corporation" is defined at 66 Pa.C.S. § 102 as "all cities, boroughs, towns, townships, or counties of this commonwealth, and also any public corporation, authority, or body whatsoever created or organized under any law of this commonwealth for the purpose of rendering any service similar to that of a public utility." At the hearing, Beers, the Public Works Director and City Engineer for the City of Lebanon, testified that the MPO had funding to install the gates. However, it was never determined if the MPO actually qualified as a municipal corporation. Even the Commission admits in its brief that "it would have been improper for the Commission to assign costs to that organization" for that reason. (Commission's brief at 12.) Because the Commission failed to determine if the MPO was a municipal corporation, it erred by allocating the crossing costs to Lebanon County

rather than the Lebanon County MPO before determining if that was the proper entity.

Accordingly, the Commission's decision and order is affirmed except for the final issue on Lebanon County's costs which is vacated and remanded for that specific determination.

### ORDER

AND NOW, this 9th day of October, 2008, the portion of the Public Utility Commission's October 25, 2007 order relating to the assignment of costs to Lebanon County is vacated and this matter is remanded to the Commission for further proceedings in accordance with this opinion. In all other respects, the Commission's order is affirmed.

Jurisdiction relinquished.